The County of Wapello v. Bigham, Administrator, et al.

THE COUNTY OF WAPELLO v. BIGHAM, Administrator, *et al.*

1. TERM OF THE COUNTY TREASURER. The term of office of a county treasurer is limited to two years and until his successor is elected and qualified; but a failure to qualify within the time and in the manner prescribed by law, creates a vacancy in the office which should be filled by appointment by the county judge.
2. SAME. Where a treasurer was re-elected and continued in office during the second term without being re-qualified, *held*,
    1. That after the expiration of the time fixed for qualification he did not legally hold over, but remained treasurer *de facto* only.
    2. That the sureties on the bond executed by him, when qualified for his first time were not liable for his misfeasance or nonfeasance in office after the expiration of that term.
3. LIABILITY OF SURETIES. Sureties on official bonds are liable only for acts done during the term for which the bond was given, even when the principal holds over after the expiration of such term.
4. JOINDER OF PARTIES. The administrator of one of several obligors in an official bond cannot be joined as a party defendant with such obligors in an action on the bond.
5. STATUTE OF LIMITATIONS. The statute of limitations can not be assigned as a ground of demurrer. It must be pleaded so that the other party may answer it.

*Appeal from Wapello District Court.*

SATURDAY, NOVEMBER 5.

ON the first Monday of August, A. D. 1851, James Pomroy was elected to the office of Recorder and Treasurer of Wapello county, and qualified as Treasurer on the 13th August, with the defendants C. C. Warden, John Pomroy, A. Mudge, H. P. Graves, E. Washburn, J. W. Caldwell, M. C. Hill and D. Gephart as sureties. At the August election, A. D. 1853, Pomroy was re-elected to the same office, but did not qualify under his second election and yet continued to occupy the office and to discharge the duties pertaining to it until August 1855, when one Knox was elected and qualified as his successor.

The action is brought upon the official bond of J. Pomroy given in August 1851, against his administrator and his sureties, in which the breaches assigned are a failure to account and to pay over money received by him at divers times from August A. D. 1851, to August 1855.

Judgment in the District Court was rendered in favor of the defendants and the plaintiff appeals.

*Hendershott & Burton* in their argument for the appellant contended: 1. That James Pomroy had a right under his election and qualification to hold his office for two years and until his successor was elected and qualified, and that he was during all that time county treasurer as well *de facto* as *de jure*, citing Code of 1851, sections 96, 4th clause 106, 151, 161, 240, 241, 324, 327, 330, 334, 336, 337, 338, and also of chapters 34 and 35; *Proprietors Liverpool Water Works* v. *Atkinson*, 6 East. 507; *Raney* v. *Governor*, 4 Blackf. 3; *United States* v. *Kirkpatrick*, 9 Wheat. 720; *Bigelow* v. *Bigelow*, 8 Mass. 275; *Thompson* v. *Young et al.* 2 Ham. 334; *Lord Arlington* v. *Merrick*, 2 Saund. 411; *United States* v. *Van Zandt*, 11 Wheat 184; *Dox* v. *United States*, 1 Pet. 318. 2. That during all the time he was in office the

liability of his sureties continued, without reference to the second election, in support of which the same authorities were cited. 3. That the statute of limitation cannot be pleaded in an action wherein the county sues for the benefit of the whole people of the county, citing *Madison County v. Bartlett*, 1 Scam 70; *State Bank of Illinois v. Brown et al.*, Ib. 107; *United States v. Hoar*, 2 Mason; *The People v. Gilbert*, 18 John. 227; *Kemp v. The Commonwealth*, 1 H. & M. 85. 4. Nor can it be interposed by a defendant who sustains the relation of trustee, *Johnson v. Humphreys*, 14 S. & R. 394. 5. Yet if it can be interposed it can not be done by demurrer—it must be pleaded. 6. An action on a treasurer's bond may be brought at any time within ten years after the cause of action accrues, citing in support of the last two propositions, Code of 1851, sections 1569, 1661, 1670, Ch. Pl. 517; 6 Bac. Abr. 104 and authorities cited.

*T. Bigham* for the appellees. No brief on file.

WOODWARD, J.—It is not necessary to make a detailed statement of the pleadings. The questions arose upon a demurrer to the petition, which is full and minute in its statements.

The leading question was whether the sureties are liable for moneys received by their principal after the expiration of his first term of two years. The plaintiff contends that as Pomroy was re-elected and did not qualify anew for the second term, he held over by virtue of the words, "and until his successor is elected and qualified," and that thus his term of office in fact continued until his successor was elected in August 1855, and qualified, and that therefore his sureties continued responsible till that time. It is very clear that the statute makes the term of this office one of two years. It is not for that precise *time*, but it is for a *term* of two years, and may be in fact for a little more or a little less than that *time*. It is expressly declared that he is elected

for this term, and both he and the county judge are directed to keep separate accounts for each term of his office. If he is re-elected he is directed to qualify anew, the same as if another were elected.

But it is argued that he holds until his successor is elected and qualified. He was re-elected but did not qualify, and the plaintiff claims that he held on by virtue of the above provision. Admitting he did properly so hold, still it was his duty to qualify anew. And further, he could not thus hold for the following two years, but would hold only till the next election at which a successor could be elected. Had another, then, been elected his successor and failed to qualify, and if Pomroy would have held over, he must qualify by giving a new bond, and by not doing this the office becomes vacant, and he held only *de facto*. The provisions of the Code relative to these points are found in sections 96, 104, 4th clause, 161, 240, 241, 334, 338, 429, 434, 436.

In the above we have assumed, for the argument, that the incumbent might hold over, but such a case seems to be clearly provided for in the statute. By section 429, div. 4, it is enacted that a refusal or neglect to give bond and take the oath creates a *vacancy*, and then by section 436 this vacancy is to be filled by the appointment of the county judge, and to hold until an election, section 439 ; and so it appears that, although the successor do not qualify, the incumbent does not hold over, and Pomroy continued to discharge the office wrongfully and was treasurer *de facto* only.

But whatever may be the law in relation to Pomroy's holding over, it is a well settled principal that sureties are holden only for the term for which their bond is given, and it is not essential that the bond does not express the time or term ; the law determines this, and requires the bond for this, and it is the same though the officer be re-elected to the same office. *The S. C. Soc.* v. *Johnson*, 1 McCord 41 ; *Bigelow* v. *Bridge*, 8 Mass. 275 ; *Commissioner* v. *Glenwood*, 1 Dessaus. 440 ; *S. Car. Jus. Co.* v. *Smith*, 2 Hill 589.

And many other authorities have the same bearing, indirectly ; such as those holding that the surety is not bound beyond the terms of his bond, as the law enters into and forms part of contracts, so the law of an office forms part of the official bond.   *S. C. Soc.* v. *Johnson*, 1 McCord 41 ; *U. S.* v. *Nicholl*, 12 Wheat. 505; *Walsh* v. *Bailie*, 10 John. 180; *U. S.* v. *Boyd*, 15 Pet. 187.

The cases cited by the plaintiff do not negative the above doctrine concerning the obligation of sureties, and sometimes impliedly recognize it.   It is the only just and safe doctrine toward sureties, and while it is admitted that the laches of government or its officers, in such cases as are referred to, do not discharge them, still it cannot be contended that their neglect extends the obligation of sureties and throw unexpected duties upon them.   The doctrine that the laches of government in calling an officer to account, and the like, does not release a surety, admitting it to be so, affords no countenance to the idea that the omission of the county judge to appoint a day for Pomroy's qualifying on his second term, or to call an election to fill the vacancy, extends the responsibility of the sureties over the second term.

The words, "and until his successor is elected and qualified" are intended to cover the time between the election and the qualification.   This time prescribed for a successor to prepare himself to enter upon his office, is the limit of the sureties, responsibilities, and if the former does not perform this duty there is a vacancy, and there should be an appointment.   That liability cannot be extended over another term by the omission of these requirements.   The law gives the office a term of two years.   The surety knows this and takes the responsibility with a view to it.

Of the eight causes for demurrer, the first two, relating to the joinder of the administrator with the sureties, and to the demand not being sworn to as required in probate proceedings, were overruled by the court.   The last two relate to the statute of limitation, which will be adverted to hereafter.

The remaining four causes concerned the liability of the sureties. The demurrer being sustained as to these, the plaintiff stood by his pleading and did not amend, and the judgment was rendered for the defendants. The plaintiff now makes the question whether he should not recover for such breaches as may come within the proper term of Pomroy's office, that is, from August 1851 to August 1853. The declaration avers the entire four years from August 1851 to August 1855, without discrimination of terms or years, and treats the whole period as one term. Yet if there are any items which can be assigned to the decedent's proper term of office, we perceive no reason (in the nature of the action or of the demands) why the plaintiff should not have gone to trial upon these, if he ought to do so. The demurrer was sustained for the greater part, but it did not reach any such item, But the reason lies in the indiscriminate treatment of all the items of demand, in respect to time.

They are all laid within the four years, but none of them within the first two. Thus, it is alleged that Pomroy received the tax lists of the years 1851, 1852, 1853 and 1854, and that he collected the full amount of them (naming the amount of each) but it is not stated when, nor within what period, he collected them, or any part of them. It is alleged that "at the termination of the office of recorder of said Pomroy, there remained in his hands unexpended and unaccounted for, of the tax of 1851, $6,492.89, and in like manner of the years 1852, 1853 and 1854, but it is manifest that the *termination* of the office, intended, is in August 1855, so that it no where appears when, nor within what year, or what two years he received the money.

And it is the same in regard to divers sums of money charged as received by him from other sources. They are alleged to have been in his hands not accounted for, in August 1855, but it is not charged when he received them, nor is there anything from which it can be made out that they were received within that period, for which the sureties are responsible. The charge that he had not accounted up to

the date of August 1852, might be sufficient as a charge that he did not account within his term proper, and up to August 1853, but still it remains true that it is not alleged that he received the money within that period.

This being the case, and the sureties not being answerable for sums received after the August election in 1853, (or including the space of thirty days thereafter) the plaintiff was not entitled to recover on any part of his declaration.

Finally, under the demurrer, the defendant assigned the limitation of the cause of action, under the statute. Although the matter may appear upon the face of the petition, the statute of limitation cannot be assigned as a ground of demurrer, in an action at law, for the reason that there are answers to it which may take the action out from its operation. It must be pleaded so that the other party may have an opportunity to answer it.

That cause of demurrer was well assigned which objects that the administrator of the deceased should not be joined with the other parties. Such is the rule of the common law, and there is nothing in the Code which changes it.

The judgment of the District Court, sustaining the demurrer, is affirmed.