HARRIS (ALEXANDER v.). See Case No. 168.

———

## Case No. 6,114.
### HARRIS et al. v. BABBITT.
[4 Dill. 185.][1]

Circuit Court, W. D. Missouri. 1877.

OFFICIAL BOND OF CASHIER—LIABILITY OF SURETY IS LIMITED TO HIS OFFICIAL TERM.

1. Suit upon the official bond of the cashier of a savings bank, incorporated under the laws of Missouri. The statute provided that the officers of the bank should hold their offices for "one year, and until their successors are elected and qualified;" but the statute did not require a bond as part of the qualifications of such officers. A by-law passed by the directors, required the cashier to give bond. Harris was elected cashier by the directors, and on January 16th, 1872, he gave a bond, conditioned for the "faithful discharge of his duty, in accordance with law, and the charter and by-laws of the bank." He was re-elected cashier, January 16th, 1873, but gave no new bond, and was allowed by the directors to continue to act without doing so. *Held*, that the sureties were not liable for the cashier's defaults in February and March, 1873.

[Cited in Scott Co. v. Ring, 29 Minn. 405, 13 N. W. 184; Savings Bank v. Hunt, 72 Mo. 601; State v. Ranson, 73 Mo. 92.]

2. His term of office was annual, and the sureties are not liable for defaults happening after another election the next year, and the lapse of a sufficient time to qualify by giving a new bond.

[Error to the district court of the United States for the Western district of Missouri.]

This was an action on the official bond of the plaintiff in error, John S. Harris, as cashier of the Union German Savings Bank, of which the defendant in error [James C. Babbitt] is the assignee in bankruptcy. It is alleged in the petition that the Union German Savings Bank was a corporation organized under the laws of the state of Missouri; that said John S. Harris was, on January 14, 1872, elected cashier of said bank; that on January 16, 1872, he, as principal, and [Seth E.] Ward and [Henry] Muhlbach as sureties, executed

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

their bond in the sum of $25,000, and on the 7th of February, 1872, delivered the same to the bank; that the condition of said bond was, "that if said Harris shall faithfully, honestly, and impartially discharge all his duties as such cashier, in accordance with law, and the charter and by-laws of the bank, then the bond to be void, otherwise to remain in full force and effect." The petition assigned the various breaches of the bond. The answer is a general denial of the breaches set forth in the petition. It alleges that the bond was delivered on the day it bears date, and not on the 7th of February, 1872; that Harris was elected cashier on the 14th of January, 1872, for one year, and no longer; that on the 14th of January, 1873, a board of directors of the bank was elected; on the 16th of January, 1873, the board, at its first meeting, duly elected a president, vice-president, secretary, and cashier, for another year; that at said date, and by said board of directors, said Harris was again elected cashier of said bank for the ensuing year; that, in pursuance of said election, and with the knowledge of the board of directors, all the officers, including cashier, entered upon the discharge of their duties as such officers, and continued to perform their duties until the corporation was adjudged a bankrupt. The replication denied that Harris acted under the pretended election in 1873, but insisted that, from January 14, 1872, and up to March 13, 1873, he was acting under the first bond and first election; that he never gave bond, or otherwise qualified, under the election of 1873; that no successor in office to said Harris was ever elected or qualified. On the trial, the plaintiff read in evidence a resolution of the board, made on the 11th January, 1872, which is as follows: "Resolved, that the bonds required from the different officers for the ensuing year be as follows: Cashier, $25,000; assistant cashier, $20,000; receiving teller, $15,000; paying teller, $15,000; bookkeeper, $5,000; assistant bookkeeper, $3,000; messenger, $2,000; attorney, $1,000." The defendants proved, from the record of the board of directors, that on January 11, 1872, the "new board-elect met, pursuant to requirements of the by-laws," and "proceeded to the election of permanent officers for the ensuing year, with the following result," and, among others, Harris was elected cashier. On January 14, 1873, a new board was elected, said Harris being one of them; and, on January 16, 1873, this new board met, took the oath, elected temporary officers, and then proceeded "to elect the regular officers to act as such for the ensuing year," and, among the others, Harris was again elected cashier, and the board adjourned to the next regular meeting, "to receive the bonds of the different officers as elected." There was no meeting of the board held, as the by-laws required, on the first Tuesday of February or March, 1873, and the first meeting of the board after the election of officers, on the 16th January, 1873,

was held on the 13th March, 1873. None of the officers elected on the 16th January, 1873, gave bond for that year. The jury, under the instruction of the court, found a verdict for the plaintiff for $19,168.15, but they specially found that the two breaches of the bond, on which the verdict was based, did not severally occur until February 11, 1873, and March 12, 1873. Judgment was rendered on the verdict, and the sureties sued out this writ of error. The controlling question in the case was, whether the sureties on the bond of the cashier, executed on the 16th day of January, 1872, were liable for his default, on the 11th day of February, and the 12th day of March, 1873. The district court [case unreported] instructed the jury that they were liable. The other material facts appear in the opinion of the court, which was orally pronounced, and is reprinted from the notes of the short-hand reporter.

F M. Black and James F. Mister, for plaintiffs in error.

Henry Flanagan and Karnes & Ess, for defendant in error.

DILLON, Circuit Judge. This is an important case, alike in the amount and in the principles involved. It has been very fully argued by counsel, who, with commendable industry, on one side and the other, have brought before me all the authorities touching the question on which the case turns. If my engagements would permit, I would like to look into it further, and reduce my views to writing. As I may not get time at an early date to do this, and as it is not likely that further examination and reflection would change my views, I proceed to dispose of the case at this time.

The plaintiff below, Babbitt, is the assignee in bankruptcy of the Union German Savings Bank, and Harris and the other defendants, as his sureties, are sued in respect of the alleged liability of Harris, on his official bond, as the cashier of that bank. The sureties alone defend. The bank is a savings bank, incorporated under the laws of this state, and the statute contains a provision applicable to this controversy, to which I will refer presently. The sureties make defence, and the leading question in the case is, whether they are liable on this bond for the default of their principal, for breaches of its condition by him, after the term for which he was elected had expired; and that depends, primarily, on the question whether his election, in 1872, and his term of office, are to be considered as annual. He was elected cashier on January 14, 1872, for one year, or, if the statute applies, for one year, and until his successor is elected and qualified. On January 16, 1873, there was another election, and he was again elected by the directors his own successor, but he never gave any new bond. This suit is on the bond originally given, dated January 16, 1872.

The by-laws of this institution provided for monthly meetings of the board of directors, and if these meetings had been held, there would have been a regular meeting of the board of directors on the first Tuesday of February after this new election, on January 16, 1873, and another such meeting in March. Several breaches of this bond are alleged, but all of them were after the time fixed for the February, 1873, meeting.

Now, the question is, whether the sureties on the bond, given in January, 1872, are liable for these breaches. The only provision of statute applicable to this question, is section 3 of the act in relation to savings banks [Laws Mo. 1877, p. 29], which is as follows: "The affairs and business of any such association shall be managed and controlled by a board of directors, not less than five nor more than thirteen in number, from whom shall be designated by themselves a president, a cashier, and secretary, who shall hold their offices for one year, and until their successors are duly elected and qualified." There is no provision of statute, so counsel on both sides state, in terms requiring the cashier to give a bond, but there is a provision of statute authorizing the directors to make by-laws, and these by-laws were made by the directors, who elected the cashier, who were the managing officers of the institution, and not by the stockholders, or by the body of the corporation at large. Among other by-laws ordained by the directors, was one to this effect: "The officers of the bank, before entering on the duties of their respective offices, shall execute to the bank an obligation, with two or more sureties, as follows: 'Cashier, $25,000,'" etc.

The bond in suit, dated January 16, 1872, is in the penal sum of $25,000, with this condition: "The condition of the above obligation is such, that whereas the above named John S. Harris has been duly elected cashier of the Union German Savings Bank, of Kansas City, Missouri, now, therefore, if the said John S. Harris shall faithfully, honestly, and impartially discharge all his duties as such cashier of the Union German Savings Bank, of Kansas City, Missouri, in accordance with the provisions of law and the charter and by-laws of the said bank, then this bond to be null and void; otherwise to remain in full force."

On the trial, the defendants, the sureties, asked the court to instruct the jury as follows: "That the office of the defendant Harris, as cashier, is an annual office, and if said Harris was elected cashier on the 16th of January, 1873, that is, after the year for which this bond was given, and if he was allowed to go on during the remainder of the said month, and in the months of February and March following, without giving a new bond, then these sureties are not liable for acts of said Harris after the said new election;" which the court refused, and gave this: "I instruct you that the bond sued on

is governed by the statute of this state relating to savings banks, and that this bond, under the statute, should be so construed as to produce no interregnum in the office of cashier. I therefore instruct you, these sureties are liable for said acts of Harris, cashier, up to the commencement of the month of March, 1873."

Now, then, in the first place, as to the authorities in relation to the official bonds of public officers: Under the statutes of various states in this country, public officers are elected pursuant to statutory provisions, which fix their term of office, and in many cases they are elected annually. That is the case in all the New England states. In the New England towns there is an annual meeting, at which the officers are elected, where the citizens assemble, and elect their town officers in a government of pure democracy. They are elected annually, at these annual meetings, and there is usually in these states a provision to prevent an interregnum, that these officers shall continue to hold their offices, not only for a year, but until their successors are elected and qualified.

A great many years ago, in Massachusetts, the question arose, which is presented in this case, whether, under such a provision, the sureties of an officer elected for a year, but where the default in his official duties occurred after the year, but before his successor had qualified, were liable in respect to such default. It came before the supreme court of Massachusetts in Bigelow v. Bridge, 8 Mass. 275, and that court decided that there was no such liability. The same question arose afterwards in Chelmsford Co. v. Demarest, 7 Gray, 1, when Chief Justice Shaw was on the bench, and a thorough examination of it was made. The court held the same way—that the office was annual, and that where the condition of the bond was that the officer should hold until his successor was elected and qualified, that such a condition did not cease to make it an annual office, so far, at all events, as the sureties were concerned. That ruling has been accepted, wherever it has come in question, by all the New England states. In New Hampshire (Dover v. Twombly, 42 N. H. 59), in a fully considered opinion, and in Connecticut (Welch v. Seymour, 28 Conn. 387) the views of the supreme court of Massachusetts have been followed, and they have been adopted in other states. See Moss v. State, 10 Mo. 338; State Treasurer v. Mann, 34 Vt. 371; Mayor, etc., v. Horn, 2 Har. (Del.) 190; South Carolina Ins. Co. v. Smith, 2 Hill (S. C.) *590 (258); South Carolina Soc. v. Johnson, 1 McCord, 41; Commissioners of Public Accounts v. Greenwood, 1 Desaus. Eq. 450; Wapello Co. v. Bingham, 10 Iowa, 40; 38 N. J. Law, 254; Kingston Mut. Ins. Co. v. Clark, 33 Barb. 196.

In some of the states, notably North Carolina, Indiana, perhaps Maryland, possibly Mississippi, where the same question has come up, the courts have decided the other way, and have held, under the clause that "he shall hold until his successor is elected and qualified," that there may be a liability on the sureties for a term extending beyond the year. State v. Berg, 50 Ind. 496; Thompson v. State, 37 Miss. 518; Placer Co. v. Dickenson, 45 Cal. 12; State v. Daniel, 6 Jones (N. C.) 444; Sparks v. Farmers' Bank [3 Del. Ch. 274]. But I must say, in regard to these decisions, that those courts do not seem, in general, to have had their attention called to the reasoning on the other side, and are not as fully considered, in my judgment, as the first line of decisions to which I have referred.

But, when we look at the peculiarities of the present case, I think it can be distinguished from even the latter line of decisions, and that, if they were admitted to be correct in respect to public officers, still it could be possible, on just and solid grounds, to distinguish this case from those. Now, what is this action, when we get to the bottom of it? The plaintiff is the assignee in bankruptcy of this bank, and the legal rights of the parties are precisely the same, in my judgment, as though this bank had never been thrown into bankruptcy; as if this default had occurred, and the bank had continued to be solvent, and the bank itself had brought this same action instead of the assignee in bankruptcy. Nothing is clearer than that, under the Missouri statute, it is contemplated that these officers shall be elected annually, for such is the express provision, that there shall be designated a cashier, who shall hold his office for one year, and until his successor is elected and qualified; and the provision is, there shall be an annual election, that the directors shall be elected annually, and the directors are annually to select their own cashier. A cashier that is satisfactory to one board of directors may not be to another, and they are to elect him each year. In accordance with this provision, they held their election January 16, 1873, and they elected a new cashier—that is to say, they elected Mr. Harris his own successor, but neither he nor any of the other officers gave any new bond.

Now, what is the object of the bond in suit? It is not like official bonds, which are intended to protect the public, and where, unless the provisions of the statute are complied with, the public are comparatively helpless. If a public officer gives an insufficient bond, a citizen may know it, but how can he help it? In this case, however, the bond is required for the indemnity of the private corporation. Who were managing the corporation? The directors. Where is the fault in this case? With whom rests the laches that led to this default? The retention of this cashier without giving a bond—whose fault is that? Who neglected their duty in that regard? It was the officers of this corporation—the men entrusted by the stockholders to manage its affairs. They are in fault for

not requiring the bond. Now, then, as between the assignee representing this corporation, whose agents are to blame—who shall suffer? The sureties who engaged for Harris' performance of his duties for one year, or until his successor is elected and qualified, were blameless, and cannot reasonably be supposed to have intended to undertake an obligation of interminable duration; for if they can be held for what happened in March, 1873, they can be held for what happened in December, 1873, and so on indefinitely. Who is to blame? Who ought to suffer? It is to be observed in this case that the statute does not require a bond. It says, indeed, that officers shall hold their office until their successors are duly elected and qualified. How qualified? It was conceded in the argument, that if this board of directors, in January, 1873, had passed a by-law or resolution, "we dispense with bonds," the bank would have been bound by it; and still, it is perhaps true that this body, having enacted a by-law requiring bonds, they could not be dispensed with without a repeal of the by-law, although the question of estoppel, or waiver of the by-law, might arise, where the directors are the very parties having full control of the matter; but it never could arise if the statute had in terms required a bond.

Under these circumstances, whatever may be the true rule in respect to annual terms of public officers, where it is expressly required by the statute that there shall be qualification by giving of a bond, I am of opinion that, on the facts of this case, these sureties ought not to be held liable for defaults which happened at a time, in February, 1873, after a monthly directors' meeting had passed, and these men had failed to require the new cashier, he being his own successor, to give bond. The judgment of the district court is reversed, and a new trial ordered. Reversed.