COUNTY OF SCOTT *vs.* JOHN J. RING and others.

August 28, 1882.

County Treasurer—Failure to Qualify upon Re-election—Vacancy.—
R. was elected and qualified as county treasurer for a term commencing
March 1, 1878. In November, 1879, R. was re-elected to the office for
the term to commence March 1, 1880, but did not qualify for such sec-
ond term, as required by statute, on or before January 15, 1880. He
continued to hold the office until June 21, 1880. *Held,* construing the
statutes, that the office became vacant, in respect to such second term,
in such a sense that R. was not entitled to administer it, and that it be-
came the duty of the board of county commissioners, in accordance with
the statutory requirements, after the failure of R. to requalify by the
15th day of January, to appoint a person to the office for a period to
commence March 1, 1880.

Same—Defalcation of Treasurer holding over—Liability of Sureties
upon Official Bond for Former Term.—The liability of the sureties
upon the official bond of R., (given upon his first election,) for the de-
linquencies of their principal after March 1, 1880, is to be determined by
a construction of the bond, read in connection with the statute relative to
the term of office, and prescribing conditions respecting the tenure of the
incumbent. The statute, in legal effect, forms part of the contract. So con-
sidered, it is *held* not to have been contemplated that R., after his failure
to qualify for the second term, should remain in the office; but rather that
the office should be filled by appointment. Hence, the obligation of the
sureties did not extend to a period subsequent to the end of the first term,
unless, under some circumstances, for such further time as might be
reasonably necessary for the purpose of filling the office by appointment,
notwithstanding the fact that the statute provided that the term of office
should "continue for two years, and until a successor is elected and
qualified."

Same—General Bond does not Include State School Funds—Indis-
criminate Mingling of Funds.—Sureties upon the official bond of a
county treasurer are not liable for the conduct of that officer in respect to
moneys paid to him on account of principal or interest from the sales of
state school lands. Such moneys having been indistinguishably mingled
with the funds in the county treasury, upon proof only of subsequent
defalcation, loss, or shortage from the whole commingled funds, so that

the balance remaining was not sufficient to meet the demand upon both funds, the sureties upon the county treasurer's bond cannot be charged with the whole of the deficiency.

The defendant John J. Ring was the duly elected and qualified treasurer of the county of Scott for the regular term commencing March 1, 1878, and ending March 1, 1880, and the other defendants are the sureties upon his official bond, as such treasurer, given for that term. This action was brought in the district court of that county, upon such official bond, to recover the amount of certain funds embezzled by said Ring, as county treasurer, and was tried, without a jury, before *Macdonald,* J., who, upon the facts as found by him, ordered judgment for plaintiff.

The facts as found, stated more fully than in the opinion, are as follows: In November, 1879, defendant Ring was re-elected as county treasurer, and on March 1, 1880, upon his having qualified, would have become his own successor in office. On January 15, 1880, Ring presented to the board of county commissioners, for approval, his bond for his second term, which, on January 16, 1880, was duly rejected, because of its informality, illegality and insufficiency. On March 1, 1880, the board of commissioners passed a resolution reciting the rejection of the bond offered January 15th, and requiring Ring to furnish a new and additional bond. On March 2, 1880, Ring presented such new bond, which was, on March 5, 1880, duly rejected by the board of commissioners as being insufficient. No other bond was furnished or presented by Ring subsequent to this time, and on June 21, 1880, the board passed a resolution declaring the office vacant and appointing a successor. The court also found that an examination of the county treasury made by the board of commissioners on March 12, 1880, showed that there was then a balance due the county, not exhibited or accounted for by Ring, of $241.72; that an examination made by the board of auditors on May 11, 1880, showed that there was unaccounted for the sum of $2,103.97, after the board disallowed items claimed as credits by Ring, to the amount of $1,826.58; that from March 1, 1880, to June 21, 1880, when he was removed from office, Ring received, as county treasurer, the sum of $32,969.78, and the additional sum of $1,744.72 belonging to the

state school funds; and that on June 21, 1880, Ring had in his possession, as county treasurer, the sum of $6,908.14, besides the $1,744.72 belonging to the school fund, making in all $8,652.86, which he had not then, and has never since, accounted for or delivered to his successor in office.   On August 8, 1880, Ring's successor in office paid to the state the sum of $1,744.72, on account of the state school funds, out of the funds in the county treasury turned over to him by Ring on June 21, 1880.

The court, basing its decision on *Loring* v. *Benedict*, 15 Minn. 198, held, that, upon Ring's failure to qualify under his second election, he continued to hold the office of county treasurer under his first election, and that, until his removal, on June 21, 1880, he was *de jure* county treasurer, and in his first term of office; that, such being the case, the other defendants are liable as his sureties for any deficiency or embezzlement occurring prior to his removal on June 21, 1880; that, the state school funds having been mingled indiscriminately with the county funds, and Ring's successor having paid the amount thereof to the state from the funds in the treasury at the time of Ring's removal, it must be considered that the state secured its own in "what may be termed the race of diligence," and the bondsmen cannot now ask to have this amount deducted from Ring's deficiency. Judgment was accordingly entered for $8,652.86 with interest, and ten per cent. penalty and costs, from which the defendants appeal.

*Southworth & Marrinan* and *Geo. B. Young*, for appellants.

*H. J. Peck* and *Henry Hinds*, for respondents, cited *State* v. *Howe*, 25 Ohio St. 588; *Loring* v. *Benedict*, 15 Minn. 198; *People* v. *Tilton*, 37 Cal. 614; *McCall* v. *Byram Mfg. Co.*, 6 Conn. 428; *Spencer* v. *Champion*, 9 Conn. 536; *Congregational Society* v. *Sperry*, 10 Conn. 200; *Butler* v. *State*, 20 Ind. 169; *Dunphy* v. *Whipple*, 25 Mich. 10; *State* v. *Lusk*, 18 Mo. 333; *Cordiell* v. *Frizell*, 1 Nev. 130; *State* v. *Daniel*, 57 N. C. 444; *Com.* v. *Hanley*, 9 Pa. St. 513; Dillon on Mun. Corp. §§ 158, 159, 219, 220; Brant on Suretyship, 458.

DICKINSON, J.   This is an action upon the official bond of the defendant Ring, as county treasurer, to recover from him and his sureties for a failure on the part of Ring to pay over, according to law, public moneys received by him by virtue of his office.   The delin-

quencies for which a recovery is sought occurred, for the most part, as is disclosed by the case, between the 1st of March, 1880, and the 21st of June, 1880. Ring was elected treasurer in 1877, for the term commencing March 1, 1878, and the bond upon which this action was brought was given for such term. During the continuance of such term, and at the general election in November, 1879, Ring was re-elected for the succeeding term, to commence March 1, 1880. Ring failed to procure or furnish the bond lawfully required of him by the board of county commissioners for such second term, but continued to discharge the duties of the office until June 21, 1880, when he was deposed from office by the board of county commissioners, and one Baumhager was soon afterwards appointed to such office. Judgment was recovered in the action, and the sureties upon the bond appeal therefrom.

The question to be determined is, whether the sureties upon Ring's official bond, executed upon his first election to the office, are bound for the delinquencies of their principal occurring after his re-election, and between March 1 and June 21, 1880? The judgment is erroneous, unless these sureties were holden for that entire period.

The obligation upon which the defendants are sought to be charged is in the nature of an express contract. This contract consists of the statutory bond and the statute law relating to the office. The bond being in general terms, not in themselves expressing the extent or limit of the liability of the obligors, and being executed pursuant to the statute which prescribes the term of office and certain conditions respecting the tenure of the incumbent, the statute itself, in legal effect, forms part of the contract, and must be considered by the court in construing it. *County of Wapello* v. *Bigham*, 10 Iowa, 39; *Mayor of Wilmington* v. *Horn*, 2 Harr. (Del.) 190–195; *South Carolina Society* v. *Johnson*, 1 McCord, 41. The liability of these defendants is to be determined by the construction of the contract into which they have entered; and, in construing that contract, we are to seek to ascertain from what is there expressed the intention of the parties. The bond is in the form prescribed by statute, and, after reciting the election of Ring as county treasurer at the general election in 1877, is

v.29—26

conditioned simply that Ring shall faithfully execute the duties of his office, and safely keep and pay over, according to law, all moneys which shall come into his hands for the various purposes named. The statute which was in force at the time the bond in question was executed, contains the following provisions:

"In each county there shall be elected a county treasurer, whose term of office shall commence on the first day of March next succeeding his election, and continue for two years, and until a successor is elected and qualified." Gen. St. 1878, c. 8, § 144.

Section 145 provides that "the county treasurer, before he enters upon the duties of his office, shall take the oath required by law, * * * and he shall give bonds with * * * sureties * * * to be approved by the board of county commissioners, and in such sum as they direct, * * * conditioned that such person shall faithfully execute the duties of his office, and for the safe-keeping and paying over, according to law, of all moneys which come into his hands for state, county, township, * * * and all other purposes." The oath and bond are to be filed and recorded as directed in this section.

Sec. 146. "If any person elected to the office of county treasurer shall not give bond and take oath, as required by the preceding section, on or before the fifteenth day of January next succeeding his election, it shall be deemed a refusal to serve."

Sec. 147. "In case of a vacancy in the office of county treasurer, by death, resignation, or otherwise, the board of county commissioners shall appoint some suitable person * * * to be treasurer, who shall file the bond and take the oath prescribed, * * * and shall hold the office until a county treasurer is elected and qualified."

Chapter 9, Gen. St. 1878, is in part as follows:

Sec. 2. "Every office shall become vacant on the happening of either of the following events before the expiration of the term of such office: *First*, the death of the incumbent; * * * *sixth*, his refusal or neglect to take his oath of office, or to give or renew his official bond, or to deposit or file such oath or bond, within the time prescribed by law."

Sec. 11. "In all offices not otherwise provided for, when a vacancy is authorized to be filled by appointment, such appointment shall continue until the next general election occurring after there is sufficient time to give the notice prescribed by law, and until a successor is elected and qualified."

The statute contemplated that at the end of two years from March 1, 1878, Ring would be succeeded in the office by a person elected for the term then to commence, (March 1, 1880.) But the person elected as such successor might fail to qualify, and hence not be entitled to enter upon the discharge of the duties of the place. The legislature saw fit to make express provision for such case; and, instead of leaving the former incumbent to remain in office until a succeeding election, as might have been done by chapter 9, above recited, it was enacted that, upon such event occurring, the office should "become vacant." By force of section 147, chapter 8, it then became the duty of the board of county commissioners to fill the vacancy by appointment.

It is claimed upon the authority of *Loring* v. *Benedict*, 15 Minn. 198, that chapter 9, § 2, of the statute above recited, is not applicable to this case, because Ring was not an "incumbent" of the office by virtue of his second election. In the case cited it was considered by the court that that part of this statute which made "the death of the incumbent" create a vacancy in the office, was not applicable in case of the death, before qualification, of one who had been elected to the office of register of deeds. The pronoun "his" in the several succeeding subdivisions of the section would undoubtedly grammatically refer to the word "incumbent" in the first subdivision, but the expressed intention of the legislature, when it can be ascertained from the language used, will prevail over a strictly grammatical construction leading to a different result. There can be no doubt that the sixth subdivision is intended to refer, not merely to one already administering an office, but as well to one elected or appointed to an office, but not yet qualified, and who, hence, by force of other statutory provisions, is not entitled to enter upon its duties. The conditions there named, the non-performance of which within the time prescribed by law is declared to create a vacancy, are, in part at least, such as can properly apply only to an officer elect, but not yet quali-

fied. And such has been the construction put upon similar statutes in other states. *County of Wapello* v. *Bigham*, 10 Iowa, 39; *State* v. *Goetze*, 22 Wis. 348; *State* v. *Matheny*, 7 Kan. 327. The word "renew" in subdivision 6, taken in connection with the statute fixing the term of office, and requiring the execution of a bond, before entering upon the discharge of official duties, makes it clear, if there otherwise could be doubt, that the statute includes, among the conditions creating a vacancy, the neglect of one re-elected to an office, which he already holds, to execute a new bond as security in respect to the succeeding term. The statute was so applied in *County of Wapello* v. *Bigham, supra.*

We are brought to the conclusion that by the terms of the statute, and upon the occurrence of an event expressly provided for therein, a vacancy occurred in the office, within the meaning of the statute, by the neglect of Ring to qualify for his second term on or before the 15th day of January, 1880, and that it then became the duty of the board of county commissioners, enjoined also by statute, to appoint a person to succeed Ring after March 1st. The office of county treasurer did not, in the proper sense of the word, become *vacant*, at least before March 1st; for until then the former term of Ring continued. The word "vacant," in the statute cited, must be regarded as applying to the particular term to which the event causing a vacancy relates, which, in this case, would be the term for which Ring was re-elected, and which should have commenced March 1, 1880. Whether or not the term "vacant" is a strictly proper one to be applied to the office in such case, it is enough, for the decision of this case, to say that the event occurred on the 15th day of January, which should have terminated the right of Ring to hold the office after March 1st, and which made it the duty of the county commissioners to appoint an incumbent for a period then to commence. This was not done; nor, so far as appears, was any effort made on the part of the county commissioners to fill the office by the appointment of another incumbent until June 21st.

The statute is to be considered as a whole, and so construed as to give effect to every part. In view of the provisions of chapter 9, just considered, section 144 of chapter 8 cannot be so construed as to au-

thorize Ring, upon his own neglect or refusal to qualify under his second election, to hold the office for the period of a second term, by virtue of the election two years before. That would be inconsistent with the statute declaring a vacancy, and requiring an appointment to be made. But statutes like that referred to, fixing a definite period as the term of an office, with an alternative clause added providing for an extension of the incumbency until a successor should be elected and qualified, have been generally considered as establishing, as the proper term of an office, the period specifically named. The provision for a contingent holding over that time is a precautionary one, to prevent a possible vacancy or lapse in the office, and is not intended to create an unlimited term, or to indefinitely extend the prescribed term. *Welch* v. *Seymour*, 28 Conn. 387; *Mayor of Rahway* v. *Crowell*, 40 N. J. Law, 207; *Mayor of Wilmington* v. *Horn*, 2 Harr. (Del.) 190; *Dover* v. *Twombly*, 42 N. H. 59; *State Treasurer* v. *Mann*, 34 Vt. 371; *County of Wapello* v. *Bigham*, 10 Iowa, 39; *Bigelow* v. *Bridge*, 8 Mass. 275; *Chelmsford Co.* v. *Demarest*, 7 Gray, 1; *Mutual Loan Ass'n* v. *Price*, 16 Fla. 204. See, also, *Harris* v. *Babbitt*, 4 Dill. 185.

It thus appears that the statute under which Ring was first elected, and pursuant to which this bond of suretyship was given, did not contemplate that, in the event of Ring being re-elected, and being unwilling or unable to renew his official security for another term, he should, nevertheless, continue in office for an indefinite period beyond the term of two years. On the contrary, it expressly provided that, in such event, another should be appointed to succeed him.

These statutory requirements were in effect a part of the contract into which the defendants entered, and have the same force as though they had been expressed in the bond itself. The failure of the county commissioners to perform the prescribed duty, and the consequent continuance of Ring in office after March 1st, had not the effect to enlarge the obligation of these sureties, so as to make their contract cover a period of incumbency by him not contemplated by the law, not expressed or provided for in the contract, and which, as must be presumed, was not within the intention of the contracting parties. See authorities above cited. The undertaking of a surety is to receive a strict rather than a liberal interpretation, and is not to be extended

by implication beyond the fair scope of its terms. If we are right in treating the statute recited above as in legal effect a part of the contract, and if we have correctly construed the statute, it amounts to this: that the contract of the parties in terms provided that, upon the contingency which did occur in this case, the board of county commissioners, which represented one party to the contract, should appoint another treasurer. How, then, can it be considered to have been within the intention of the parties that Ring should remain in office under these circumstances, and these defendants be answerable for his conduct under this bond of suretyship?

It is probably true that the sureties of a public officer are not, by the neglect of other public officers or servants in the discharge of their duties, discharged from any obligation which they may have assumed. But that proposition is not applicable here. Our inquiry is, not whether these defendants have been discharged from their obligation, but rather, what was the extent and limit of that obligation, as it was originally created? If we have correctly interpreted the contract, the undertaking of the defendants did not in this case include or apply to an indefinite period subsequent to the prescribed term of two years. We do not say that that obligation would not extend in any event beyond the first day of March. It has been decided, under statutes similar to our own, and under laws of incorporation declaring the continuance of a term of office to be for a definite period named, and until a successor should be elected and qualified, that an official bond of suretyship applied to the definite period of office named, and such reasonable-time thereafter as might be necessary for the purpose of providing a new incumbent by the appointed means. See, supra, Chelmsford Co. v. Demarest; Mutual Loan Ass'n v. Price; Mayor of Rahway v. Crowell. We think the same construction of the statute and contract here would be correct, except in so far as the result is affected by the other statutes cited, and the circumstances already referred to, and to which we now again allude.

The occasion and the duty of appointment became apparent on the 16th day of January, some six weeks before the end of the then current term. Ordinarily, this time would be deemed sufficient, and, no fact appearing as a reason for an appointment not being made, we

should consider that the liability of the defendants should be deemed to have terminated at the end of the term. Circumstances, however, might lead to a different result. The facts before us are not such as to enable us to decide whether in this case the liability should be considered as existing for a reasonable time beyond March 1st. Ring did renew his oath of office, and presented a bond which seems not to have been in accordance with the requirements of the board, and it was rejected by the board on the 16th day of January. It then became the duty of the board to proceed to fill the office, for a period to commence March 1st, by appointment. But, in the discharge of that duty, time and opportunity should be given for the exercise of a reasonable discretion on the part of the appointing body. If there was good reason to believe that Ring would still be able to procure the requisite bond, it might be proper, inasmuch as he was to still continue in office until March 1st, to allow time for him to do so. It might not be proper for the board to enlarge the time prescribed by statute, nor perhaps could they prevent the operation of the statute making the office "vacant;" but they could appoint Ring as they could any other person, and might do so with evident propriety if he should present the proper qualification. If, then, the circumstances were such as to warrant the board in believing that Ring would, before March 1st, comply with the conditions necessary to his retaining the office by appointment, we cannot say they might not properly defer making another appointment. But unless such was the case, or unless some other circumstance prevented the making of an appointment before March 1st, the liability of these sureties would then be at an end; and in no event suggested by the facts in this case should it be considered that the obligation extended beyond a reasonable time after March 1st for filling the office by appointment. What would be such reasonable time we cannot predetermine.

In the view we have taken of the case, it is obviously unimportant whether, as between Ring and the public, he be regarded as holding the office after March 1st *de jure*, or merely *de facto*.

The judgment against these sureties is erroneous for another reason. While Ring was still acting as county treasurer, and between

March 12 and June 21, 1880, he received payments of principal and interest for school lands of the state sold, belonging to the permanent state school fund, and amounting to the sum of $1,744.72. The money so received was mingled indiscriminately with the moneys properly belonging in the county treasury, so that the court, upon trial, deemed it impossible to tell what portion of the funds afterwards transferred by Ring to his successor, (Baumhager,) belonged to this state school fund. On the 6th of July, Baumhager, then the county treasurer, took from the money in the treasury, and which he had received from Ring upon assuming the office, the sum of $1,744.72, and paid the same over to the state on account of such permanent school fund. The judgment against these defendants includes this sum of $1,744.72, as though the defalcation or loss had been only from the county funds. But the fact does not appear to be so. These defendants were not liable for any delinquency of Ring in respect to such state school funds. *State* v. *Young*, 23 Minn. 551. They are to be charged only on account of Ring's default in respect to moneys properly belonging in the county treasury; and as the fact has not been determined in this action that Ring had made default in respect to such (county) funds to the amount expressed in the judgment, the liability of these sureties, to that extent, has not been properly established.

Baumhager's act, in taking from the funds turned over to him a sum equivalent to that which should have been paid by Ring to the state, cannot affect the sureties. For aught that appears, the defalcation or loss, the whole of which is by the judgment charged upon these sureties, was in part from these state funds, as well as from those of the county, with which they were commingled. And such is the inference to be drawn from the facts found. It is possible that if the fact should finally appear to be that Ring intermingled the two funds, and only the total deficiency in the whole commingling funds could be shown, the state and county would be compelled to divide that total deficiency *pro rata*. In that case, perhaps, these defendants would be answerable to the county for its proper *pro rata* proportion of such deficiency. We do not, however, decide that. We

cannot anticipate what facts may be presented upon a retrial of the case, or that this question will arise.

The judgment as to these sureties is reversed, and the cause remanded for further proceedings against them in the district court, which may be had, notwithstanding the judgment as to the defendant Ring is undisturbed.

BERRY, J., *dissenting*. I am unable to concur in the foregoing opinion. On the contrary, I agree, in the main, with the views very clearly and forcibly expressed by Judge Macdonald, (who tried the action below,) in his memorandum returned to this court. When the statute says, in so many words, that a county treasurer's term of office shall continue for two years, and until his successor is elected and qualified, it seems to me that this plain, simple, and unambiguous language is to be understood in its ordinary signification. To my mind, it requires no labored construction or interpretation, for it bears but one possible meaning. The *term* of the treasurer, *as an officer de facto and de jure*, continues *until his successor is elected and qualified.* The interval between the end of the two years, and the election and qualification of the successor, is just as much a part of the *term* as is the period of two years itself. During the term the treasurer is *in office*, and the duties of the office rest upon him. The statutory condition of a county treasurer's bond is that he will *faithfully execute the duties of his office*, and safely keep and pay over, "according to law," all moneys which come into his hands, etc.

The sureties upon a county treasurer's bond guaranty the performance of this condition, and their liability upon the bond, as well as that of the treasurer himself, is for the faithful performance of the treasurer's duties, and the safe-keeping and paying over, *according to law*, of the moneys mentioned, *during the whole of the term*, as defined above, in accordance with the express language of the statute. The purpose of the bond is the complete and absolute protection of the public, and nothing short of the view above expressed will assure this. There must be no interval of time during which this protection is wanting. If it be said that this is hard doctrine for sureties, it is sufficient answer that the statute was not made in the interest

of sureties, but with an eye single to the public interest.   Suretyship always and *ex vi termini* implies and involves risks of hardship and loss, but that is no ground for relieving a surety from the obligation of his contract.   No man is compellable to become a surety.   As a condition of becoming one, he may insist on security for himself. And I can see no reason why, if a board of county commissioners inexcusably neglects to appoint a successor to a county treasurer, in violation of statutory duty, a surety apprehending prejudice may not compel an appointment by legal proceedings, nor any reason why the members of such board would not be liable in damages to any surety who was injured by such neglect without his acquiescence.

I remark, further, that the doctrine of the majority of the court as to what would be a reasonable time within which the county board should appoint a successor to a county treasurer, appears to me to introduce an element of uncertainty as to the obligations of sureties upon a treasurer's bond much to be deprecated, for reasons which hardly need be stated.   As for the authorities, they are to be found in abundance on both sides of the main question presented by this case.   See, in addition to those cited in the majority opinion, *State* v. *Howe*, 25 Ohio St. 588; *Butler* v. *State*, 20 Ind. 169; *State* v. *Daniel*, 57 N. C. 444; *Dunphy* v. *Whipple*, 25 Mich. 10.