DANVERS FARMERS' ELEVATOR COMPANY v. CHARLES JOHNSON and Others.[1]

November 18, 1904.

Nos. 14,121—(76).

**Indemnity Bond—Conversion of Funds.**

The bond given by the secretary of a private corporation contained the following condition: "The condition of this obligation is such; that whereas the above bounden Charles Johnson has been duly elected secretary of the Danvers Farmers' Elevator Company, and to serve said company in said capacity for the term of one year (from date of election), or till his successor is elected and qualified: Now, therefore, if the said Charles Johnson shall well, truly and honestly in all things serve said company in said capacity during his employment, and pay over and deliver all sums of money and goods that come into his possession as such secretary, and at all times keep a true account of the same, and pay over to his successor all money or goods belonging to said company, then this obligation shall be void, otherwise to remain in full force and effect."

The articles of incorporation provided that the secretary should hold his office until his successor was elected and qualified, and the by-laws provided that: "The secretary shall keep a true and correct account of all business of the corporation and minutes of all meetings of the stockholders and board of management; shall keep true and correct books of account, record all purchases and sales, moneys received and ex-

[1] Reported in 101 N. W. 492.

pended; receive all moneys due the corporation, and pay the same over to the treasurer without delay, taking his receipt therefor; he shall have charge of the seal of the corporation and attend to all correspondence, and he shall, before he enters upon the duties of his office execute a bond to the corporation in the sum of $3,000, in form and with sureties to be approved by the board of directors, conditional upon the faithful performance of the duties of his office, and the prompt accounting for all moneys received by him as secretary."

Having held over and acted as secretary for several months after the expiration of the year for which he was first elected, in an action brought by the corporation against his sureties, *held:*

1. The complaint states facts sufficient to constitute a cause of action.

2. Copies of the articles of incorporation and by-laws were properly received in evidence.

3. The sureties assumed their obligation with reference to the articles and by-laws, and cannot question the nature of the duties of their principal.

4. The evidence was sufficient to justify the court in holding that moneys equal to the amount of the bond came into the hands of the secretary during his incumbency, and were not accounted for by him.

5. The obligation of the sureties was not limited to the first year of their principal's election as secretary, but continued during the entire time he acted as such officer, and it is immaterial whether the shortage occurred prior or subsequent to the expiration of such year.

6. Under the circumstances of this case the evidence is conclusive that the retention of the funds received by the secretary and the failure to account for the same amounted in law to conversion, and therefore no demand by plaintiff was necessary before commencement of this action.

Action in the district court for Swift county to recover $3,000 upon a bond of indemnity executed by defendants, Charles Johnson as principal, and Hans I. Hanson, W. A. Telford and D. H. Telford, as sureties, conditioned upon the faithful performance by defendant Johnson of his duties as secretary of plaintiff corporation. The case was tried before Qvale, J., who found in favor of plaintiff for the sum demanded. From an order denying a motion for a new trial, defendants Hanson and W. A. and D. H. Telford, appealed. Affirmed.

*S. H. Hudson,* for appellants.

There being no allegation in the complaint nor legal proof on the trial as to what were the duties of said Johnson, as secretary of the

plaintiff—no by-laws having been adopted and the bond being silent on the subject—it must be presumed that the sureties undertook the faithful performance by Johnson of such duties only as naturally and commonly pertain to the office of secretary of a private corporation. 25 Am. & Eng. Enc. (2d Ed.) 176; State v. Currie, 3 N. D. 310. The duties of secretary did not involve the handling of money except incidentally, and not to any considerable amount and the sureties here were only responsible for such money as Johnson received while performing the mere clerical duties of secretary or clerk. The evidence in this case shows, however, that Johnson was in fact the general manager of plaintiff's business and had sole charge of it. All the money handled by him he received as general manager and not as secretary, as such office should be considered here. While he signed drafts as secretary, such acts were outside the capacity which defendants had become responsible for and they cannot be held therefor. If there was any embezzlement it was not as secretary or clerk, but as general manager for which defendants had not undertaken.

A surety for the fidelity of a principal appointed to a particular office or employment is not bound for acts outside of such employment nor if the nature of the employment is so changed by the act of the employer, that the risk of the surety is materially altered from what was contemplated by the parties at the time of entering into the bond. 27 Am. & Eng. Enc. (2d Ed.) 458, 498, and cases cited; 4 Am. & Eng. Enc. (2d Ed.) 684; Brandt, Sur. & G. (1st Ed.) § 138; Board of Co. Commrs. of Redwood Co. v. Tower, 28 Minn. 45; State v. Young, 23 Minn. 551; Board v. Ehlers, 45 Wis. 281; First v. Gerke, (68 Md. 449) 6 Am. St. Rep. 453, and note; Kellogg v. Scott, 58 N. J. Eq., 344.

*F. P. Olney,* for respondent.


LEWIS, J.

Plaintiff company was organized to operate a public grain elevator, and its corporate existence began July 24, 1900. By the articles of incorporation defendant Johnson was designated as its secretary, to hold office until the annual meeting of the corporation the second Tuesday in July, 1901. September 8, 1900, Johnson, as principal, and the other defendants as sureties, executed and delivered to plaintiff

company their certain bond for the amount of $3,000, upon the following conditions:

> The condition of this obligation is such; that whereas the above bounden Charles Johnson has been duly elected secretary of the Danvers Farmers' Elevator Company, and to serve said company in said capacity for the term of one year (from date of election), or till his successor is elected and qualified: Now, therefore, if the said Charles Johnson shall well, truly and honestly in all things serve said company in said capacity during his employment and pay over and deliver all sums of money and goods that come into his possession as such secretary, and at all times keep a true account of the same, and pay over to his successor all money or goods belonging to said company, then this obligation shall be void, otherwise to remain in full force and effect.

The trial court, in effect, found that Johnson was the secretary of the company during the year transpiring from the commencement of the corporation until the annual meeting held the second Tuesday of July, 1901, and that he continued uninterruptedly to be and act as such secretary until the latter part of November, 1901; that during such time he received, from time to time, and there came into his hands as such secretary, large sums of money and property of plaintiff, exceeding in value $3,000, which money he failed to pay over, or in any way account for to the company, or to keep a true and correct account of, and that during such time, after September 8, 1900, he appropriated and converted to his own use a sum of money exceeding in value the amount of $3,000, which he failed to pay over and neglected to render a true or correct account of to the company. The court further found that it was impossible to determine what portion of the $3,000 was appropriated during the first year he was secretary and what portion during the subsequent period. The court found that the whereabouts of Johnson had not been known since he left the service of the company the latter part of November, 1901, and that no demand of any kind had ever been made upon him or the other defendants prior to the commencement of the action. Judgment was

ordered for plaintiff for the amount of the penalty of the bond, $3,000. Defendants appealed.

The assignments of error present the following questions:

Does the complaint state a good cause of action?

Were the copies of the by-laws and articles of incorporation properly received in evidence, and, if so, does it sufficiently appear that it was within the line of the secretary's duties to receive and account for the moneys alleged to have been appropriated, and, if such duties pertained to the office of secretary, and the bondsmen became liable for any shortage which may have occurred on the part of the secretary, is their liability limited to the period designated as the first year of his secretaryship?

Or, conversely, if the evidence is sufficient to establish any shortage or defalcation by the secretary, are the sureties liable for any shortage occurring subsequent to the expiration of the year of his election as secretary?

And, further, it being admitted that no demand was made, is the evidence sufficient to support the finding that the appropriation was in the nature of a conversion?

1. The complaint sets forth the organization of the corporation; that September 8, 1900, defendant Johnson, who had been previously elected and qualified as secretary, as principal, and the other defendants as sureties, executed and delivered the bond in question; that during such time Johnson was acting as such secretary he received as such officer for and on account of the corporation large sums of money, the exact amount of which was unknown, and during such time, as such secretary, failed and neglected to keep true and correct books of account, and neglected and failed to make any report of his doings as such secretary to the corporation; that November 21, 1901, he absconded; that between September 8, 1900, and September 8, 1901, he wrongfully and unlawfully, and without the knowledge or consent of the corporation, appropriated to his own use more than $4,000 of the moneys of the corporation received by him as such secretary, which amount he had entirely neglected and failed to account for.

Reserving for discussion under another head the proposition that the liability of the sureties was limited to the first year of Johnson's term of office, we consider the complaint sufficient. There is no di-

rect allegation that the sureties became liable by reason of the principal's failure to account for the moneys coming into his hands, but without such allegation it necessarily appears that the sureties were liable, pursuant to the conditions of the bond, if it was executed by them as stated.    This case does not come within the rule that a recital in a written instrument attached to a complaint does not, as a matter of pleading, serve the purpose of an allegation that the facts so recited are true.    The complaint sufficiently states that the moneys came into the hands of the principal as secretary of the corporation, and that he failed to account for the same as such, and that the default took place during the time covered by the bond, for which the sureties were responsible.

2. The copies of the articles and by-laws were properly received in evidence. The originals were lost, and the copies were sufficiently proven.

3. The articles of incorporation provided that the secretary shall hold his office until his successor is elected and qualified, and the by-laws define the duties of the secretary as follows:

> The secretary shall keep a true and correct account of all business of the corporation and minutes of all meetings of the stockholders and board of management; shall keep true and correct books of account, record all purchases and sales, moneys received and expended; receive all moneys due the corporation and pay the same over to the treasurer without delay, taking his receipt therefor; he shall have charge of the seal of the corporation and attend to all correspondence, and he shall, before he enters upon the duties of his office, execute a bond to the corporation in the sum of $3,000, in form and with sureties to be approved by the board of directors, conditional upon the faithful performance of the duties of his office, and the prompt accounting for all moneys received by him as secretary.

The articles of incorporation and by-laws must be regarded as a part of the contract, the bond having been executed with reference to the duties of the secretary.  County of Scott v. Ring, 29 Minn. 398, 13 N. W. 181.  It clearly appears from the articles and by-laws that his duties were more than those usually imposed upon the secretary

of a, corporation, it being the purpose of this corporation to impose on the secretary the general management of its affairs, which included its correspondence and receiving and disbursing its funds. It is expressly provided that the secretary shall receive and account for the moneys, shall receive and pay over to the treasurer without delay all moneys due the corporation, and before entering upon his duties shall execute a bond in the sum of $3,000. Under this state of facts the sureties are in no position to question the nature of the duties of their principal.

4. According to the evidence, the secretary handled all of the money, although he did not purchase or sell wheat. There was a special buyer for that purpose. At the time the secretary absconded the cashbook and many of the wheat tickets and papers belonging to the company and those kept by Johnson as secretary were taken out of the office where they were kept—presumably stolen. Under these circumstances the plaintiff attempted to account for the amount of cash received by the secretary by showing the total amount received in drafts upon the various commission houses with which the company was doing business and from other sources, and also attempted to show what amount of money he had paid out. The sureties insist that the evidence in this respect is incomplete, and not sufficient to charge their principal with any particular amount of shortage. Having examined the record in this respect, we are of the opinion that a prima facie case was made out; that the evidence sufficiently established the facts as contended; and that during his incumbency in office the secretary received, and failed to account for, more than the amount of the penalty of the bond.

5. The evidence having been found sufficient to support the finding of the court that the principal failed to account for at least the sum of $3,000 during the time he held the office, the question arises, are the sureties liable, it not appearing that the funds were appropriated during the first year of the principal's incumbency? The articles of incorporation having provided that the secretary should hold his office until his successor is elected and qualified, and the by-laws having provided that the bond shall be executed to secure the faithful performance of the duties of his office and a prompt accounting for all moneys received by him as secretary, and the bond having expressly referred to the

language of the articles and by-laws by reciting that he had been elect- ed to serve the company in such capacity for the term of one year, or until his successor is elected and qualified, and having specifically re- ferred to the performance of his duties while acting in such capacity during his employment, the sureties entered into the contractual rela- tion with their principal and the company with reference to the time that he should act as such secretary, even though subsequent to the first year of his election. No question arises but that he was the legally qualified and acting secretary for the time transpiring after the expira- tion of the year up to the time of his departure. The articles and by- laws were drawn with special reference to such condition. There is nothing in them or in the bond which in any way refers to or intimates that the liability of the sureties was intended to be limited to a period other than that actually filled by the secretary as such.

As authority upon the proposition that the bond is limited to the first year, the case of County of Scott v. Ring, 29 Minn. 398, 13 N. W. 181, is cited. The bond there involved was executed by the county treas- urer, who had been elected for a term of two years. He was re-elected for a succeeding term of two years, but did not qualify for the second term, as required by the statute, and did not execute a new bond for such term, but continued to hold the office. Among others, arose the question whether a vacancy occurred by reason of his failure to qualify, and whether the sureties upon his bond were liable for his delinquen- cies occurring after the expiration of his first term of office. The court held that the sureties were not liable under those conditions, but the de- cision was placed upon the ground that the term of office was constitu- tional and statutory, was limited to the time prescribed, and that there was no authority for his holding over and administering the duties of the office without qualifying in accordance with the statutory require- ments.

The relation of the sureties and their principal with the corporation in the case now under consideration grows out of the contract which the parties assumed at the time of the execution of the bond, and in this respect the duties and limitations of the parties are not subject to the statutory qualifications. It is apparent that the sureties undertook by their agreement to be responsible to the corporation to the extent of $3,000 in case their principal did not honestly serve the company in

his capacity as secretary during his appointment, and should not pay over and deliver to its treasurer all sums of money coming into his possession as such; and, further, for such damages as might arise for a failure on his part to keep a true account of such moneys and to pay the same over to his successor. This duty on the part of the secretary involved the obligation to keep a proper set of books, whether he was authorized by the board of directors to do so or not. By the articles of incorporation and by-laws he was vested with extensive powers, and practically placed in entire control and management of the company, and neither he nor his bondsmen can take advantage of the fact that the corporation or board of directors had not provided a proper set of books, or directed that the account should be kept in a certain manner.

6. The conclusion is inevitable that the failure to account for the funds received, accompanied by a disappearance of the books of account and the absconding of the secretary, constituted conversion, and no demand upon the sureties was necessary before commencement of the action.

Order affirmed.