STATE EX REL. W. H. SMALLWOOD v. WILLIAM L. WINDOM.[1]

December 17, 1915.

Nos. 19,563—(22).

**Election — surrender of office not an abandonment.**

1. An incumbent of an office, failing of re-election, may abandon his right, if such is given by statute, to hold over until his successor is elected and qualified; but an incumbent claiming such right, willing to perform the duties of the office making his willingness known, may peaceably surrender possession to one having a certificate of election, without a demonstration of force, and without thereby working an abandonment; and it is found from the evidence that the respondent, claiming the office of municipal judge of Duluth under a hold-over provision of the statute, did not abandon his claim to the office though he surrendered it to the relator who had the certificate of election.

**Term of office — vacancy.**

2. Under a statute creating an office, fixing the term, and making no provision for holding over until a successor is elected and qualified, the term is definite and a vacancy exists upon its expiration.

[1]Reported in 155 N. W. 629.

---

Note.—As to purpose and effect of provision that incumbent shall hold his office until his successor is elected and qualified, see note in 50 L.R.A. (N.S.) 365.

As to power to extend term of office by postponing time for election, see note in 3 L.R.A.(N.S.) 887.

131 M.—26.

**Officer — holding over until election of successor.**

3. Under a statute providing that the incumbent of an office shall hold until his successor is elected and qualified, the Constitution not prohibiting such a provision, effect is given to the word "elected;" and, if a successor is not elected, the incumbent holds over and there is no vacancy to be filled by appointment.

**Vacancy in office.**

4. The provisions of R. L. 1905, § 2667 (G. S. 1913, § 5723), relative to vacancies in office upon the decision of a competent tribunal declaring the election of an incumbent void, do not prevent the prior incumbent from holding over, he not having waived or surrendered or abandoned his right, nor do they create a vacancy to be filled by appointment, though the former incumbent has given actual possession to the incumbent holding the certificate of election; and the statute cited did not create a vacancy in the office of municipal judge upon which the relator can base a claim to it by appointment.

**Municipal judge — term of office.**

5. Under article 6, § 9, of the Constitution, by virtue of which the municipal court of Duluth is created, the office of municipal judge is elective and the term of office, fixed by the legislature, cannot exceed seven years, the maximum period allowed by the Constitution.

**Same — change in date of election.**

6. The legislature may change the date of election for the purpose of adjusting terms of office, this being the genuine purpose, though such change incidentally operates to extend the period of office of an incumbent of the office of municipal judge holding for a definite period, and until his successor is elected and qualified, by giving him the right to hold until a date beyond the expiration of his fixed term, if, by so doing, it does not extend it unreasonably, and if such change does not infringe upon the requirement of the Constitution that the office be elective, and that the term shall not exceed seven years. Jordan v. Bailey, 37 Minn. 174, followed.

**Same — enactment invalid.**

7. The legislature cannot change the date of an election and thereby, or by other means, increase the term of a municipal judge beyond the term of seven years fixed by the Constitution; and under Sp. Laws 1891, p. 596, c. 53, § 4, providing that the municipal judge of Duluth shall "hold his office for a term of three (3) years and until his successor shall be elected and qualified," under which the respondent was elected on the first Tuesday in February, 1912, and the amendatory act of 1913 (Laws 1913, p. 107, c. 102), changing the term from three years to

four years, and providing that "the present judge of said court shall continue in office during the term for which he was elected, and until his successor shall be elected and qualified," and providing for the election of a municipal judge on the first Tuesday in April, 1915, "and on the day of the general municipal election every fourth (4th) year thereafter," and not providing for a biennial election of the municipal judge, but industriously providing against it, the effect of the statute being to extend the term of the respondent, the then incumbent, beyond a term of seven years, if no successor was elected on the first Tuesday in April, 1915, and, none being elected, the necessary result was a term of more than seven years, the hold-over provision was unconstitutional, and a vacancy was created.

**Vacancy in office — appointment by Governor.**

8. There being a vacancy in the office of municipal judge, because of the unconstitutional statute, the Governor, by virtue of article 5, § 4, of the Constitution, was authorized to make an appointment; and by his appointment the relator obtained title to the office.

**Term of office.**

9. The intent of the statute of 1913 was to make the term of office four years, commencing in April, 1915; but such statute, when the term of office of an appointee is involved, is in contravention of the constitutional provision (article 5, § 4), that the Governor shall appoint until a successor is elected, and must yield to it, and the appointive term of the relator will continue only until the April, 1917, election, when an election will be held for a four-year period.

**Election of municipal judge.**

10. If no change is made in the statute or the charter, the provisions of the general election law will be followed at such election.

**Acts of incumbents valid.**

11. The official acts of the relator and respondent in their several incumbencies since the April, 1915, election are valid.

Upon the relation of William H. Smallwood this court granted its writ of *quo warranto* directed to William L. Windom. Respondent filed his answer and prayed that the writ be discharged and the state by the attorney general and the relator filed a reply to the answer of respondent. A referee was appointed and the testimony taken before him was returned to the court. Writ of ouster.

*Lyndon A. Smith,* Attorney General, and *H. H. Phelps,* for relator.

*Fryberger, Fulton & Spear,* for respondent.

DIBELL, C.

*Quo warranto* on the relation of William H. Smallwood to try the title of respondent William L. Windom to the office of municipal judge of Duluth.

The proceeding is original in this court. Evidence has been taken and is before us.

The respondent, Judge Windom, was elected municipal judge in February, 1912, for a term of three years, and until his successor was elected and qualified. In 1913, the municipal court act was amended so that it provided for a four-year term, and further, that the then incumbent should continue in office until the election which was to be held on the first Tuesday in April, 1915, and until the election and qualification of his successor. Laws 1913, p. 107, c. 102. At this election Judge Smallwood was declared elected by the canvassing board. On appeal in a contest proceeding it was held that the preferential system of voting used at the election was unconstitutional and that Judge Smallwood was not elected. Brown v. Smallwood, 130 Minn. 492, 153 N. W. 953. Judge Windom brought mandamus soon after the election to compel the canvassing board to issue to him a certificate of election upon the theory that he was elected because of having received a plurality of the first choice votes. The trial court held that he was not elected. This holding was correct. State v. Prince, supra, page 399, 155 N. W. 628. On September 13, 1915, the Governor appointed the relator municipal judge and on the following day he qualified. He claims the office by virtue of his appointment. Judge Windom claims it because of the hold-over provision of the municipal court act.

The final question is whether there was a vacancy at the time of the appointment of Judge Smallwood. There are many connected and incidental ones.

1. The contention is made by the relator that Judge Windom abandoned his right to the office under the hold-over provision of the municipal court act.

An incumbent of an office may abandon it. To constitute an abandonment, limiting our consideration to the present case, the evidence must indicate that the officer intended to abandon, and one who voluntarily surrenders a public office to another cannot afterwards assert title to it. At-

torney General v. Maybury, 141 Mich. 31, 104 N. W. 324, 113 Am. St. 512; State v. Moores, 52 Neb. 634, 72 N. W. 1056. But one who is in possession of an office, and is apparently defeated for re-election, still claiming his right to the office by virtue of the hold-over provision, and having and expressing a willingness to perform its duties, may surrender the office peaceably to one having the certificate of election without incurring a conclusive charge of abandonment. State v. Frantz, 55 Neb. 167, 75 N. W. 546.

The evidence shows beyond genuine controversy that Judge Windom at all times after the municipal election in April, 1915, was willing to assume the duties of the office and made his willingness known. To protect his right to the office under the provision for holding over, he was not obliged to use physical force to keep it. It would have been unseemly indeed had Judge Windom, who had held the office many terms, and Judge Smallwood, who had been chosen under the preferential system, engaged in a physical contest for an important judicial office vitally affecting in both its civil and criminal branches the interests of the community, or have done otherwise than submit their claims to an orderly judicial investigation. We find from the evidence that Judge Windom did not abandon his claim of title to the office under the hold-over provision of the municipal court act.

2. When the term of office is fixed by statute, and there is no provision in the Constitution or statute for holding over, the term is definite and a vacancy exists upon the termination of the period. This is settled in this state, in accordance with authority elsewhere, in State v. O'Leary, 64 Minn. 207, 66 N. W. 264, where the office of clerk of the district court, a constitutional office, was involved. It was there held that the term of office of the clerk, fixed by article 6, § 13, expired at the end of the four-year period, and that there was then a vacancy to be filled by the district judges as provided by statute. See R. L. 1905, § 114 (G. S. 1913, § 230). The same principle was held in State v. Sherwood, 15 Minn. 172 (221), 2 Am. Rep. 116; Crowell v. Lambert, 10 Minn. 295, (369), and State v. Frizzell, 31 Minn. 460, 18 N. W. 316. The question is not an open one in this state.

From what is said a holding should not be inferred that one in office for a definite term, without a hold-over provision, may not, upon the

occurrence of a vacancy, continue to perform the duties of his office until action by the appointing power. See Robb v. Carter, 65 Md. 321, 4 Atl. 282; State v. Clark, 87 Conn. 537, 89 Atl. 172, 52 L.R.A.(N.S.) 912; Crovatt v. Mason, 101 Ga. 246, 28 S. E. 891. There is still a *de jure* office, and in the interest of the public service it may be that the incumbent should continue the performance of his duties. The question is not before us. We mention it to avoid a misunderstanding of what we do hold.

3. When the statute creating an office provides that the incumbent shall continue in office until his successor is elected and qualified, such hold-over provision, if not in contravention of the Constitution, is valid, and a vacancy does not exist upon a failure to elect.

In County of Scott v. Ring, 29 Minn. 398, 405, 13 N. W. 181, the court stated that such hold-over provisions "have been generally considered as establishing, as the proper term of an office, the period specifically named. The provision for a contingent holding over that time is a precautionary one, to prevent a possible vacancy or lapse in the office, and is not intended to create an unlimited term, or to indefinitely extend the prescribed term." The question there was upon the liability of the bondsmen of a county treasurer re-elected for a term of two years but who did not qualify for his second term. The loss was in the hold-over period. The statute further provided that a failure to qualify within a designated time created a vacancy and the treasurer did not qualify within the time fixed. The language of the court is cited by relator in support of his contention that, under the hold-over provision of the municipal court act, there is a vacancy which may be filled by appointment, in the event of which the respondent is without right to the office. A number of cases are cited in the Ring case. Upon an examination of them we find that they refer to the liability of the bondsmen of corporate or public officers for the period which the officer held over. None are in point on the proposition now under consideration.

The usual phrase found in statutes and constitutions is "until his successor is elected and qualified." Under such phrase, and under similar ones, it is held that there is no vacancy upon a failure to elect and that the incumbent holds until his successor is elected and qualified, the courts giving its natural meaning to the word "elected". Oppenheim v.

Pittsburgh, C. & St. L. R. Co. 85 Ind. 471; State v. Harrison, 113 Ind. 434, 16 N. E. 384, 3 Am. St. 663; Kimberlin v. State, 130 Ind. 120, 29 N. E. 773, 14 L.R.A. 858, 30 Am. St. 208; People v. Burch, 84 Mich. 408, 47 N. W. 765; Andrews v. State, 69 Miss. 740, 13 South. 853; State v. Dabbs, 182 Mo. 359, 81 S. W. 1148; State v. Foster, 39 Mont. 583, 104 Pac. 860; State v. Moores, 61 Neb. 9, 84 N. W. 399; People v. Hardy, 8 Utah, 68, 29 Pac. 1118; State v. Tallman, 25 Wash. 295, 65 Pac. 545; State v. Meilike, 81 Wis. 574, 51 N. W. 875. Additional and similar cases are cited in 37 Cent. Dig. p. 1872, § 69; 29 Cent. Dig. p. 1586, §§ 25, 27, 29; 15 Dec. Dig. p. 706, §§ 49-54.

The rule stated is without substantial dispute, and its correctness is necessarily implied in State v. O'Leary, supra, and in other cases cited in connection therewith.

The result is that Judge Windom is entitled to hold office until his successor is elected and qualified, and the appointment of Judge Smallwood by the Governor is ineffective, unless the effect of the general statute was to create a vacancy when Judge Smallwood's election was held invalid, or unless the hold-over provision of the municipal court act offends the provision of the Constitution; and to these questions we now give attention.

4. The statutory provisions as to vacancies are as follows:

"Every office shall become vacant on the happening of either of the following events, before the expiration of the term of such office:

1. The death of the incumbent.

2. His resignation.

3. His removal. * * *

6. His refusal or neglect to take the oath of office. * * *

7. The decision of a competent tribunal declaring his election or appointment void."

R. L. 1905, § 2667 (G. S. 1913, § 5723).

The relator claims that under subdivision 7 there was a vacancy when it was determined in Brown v. Smallwood, 130 Minn. 492, 153 N. W. 953, that he was not elected because the preferential system of election was unconstitutional. We do not concur in this view. The legislature did not intend to render nugatory, in such a case, the provisions as to holding over. The legislative disposition is against a vacancy and re-

sultant appointment. One reason for the provision for a hold-over is that it is thought better in the case of an elective office to take the judgment of a prior electorate rather than that of the appointing power. Judge Windom was right in giving possession of the office to Judge Smallwood, who held the certificate of election. In doing this he did not abandon his office or waive his right to hold over. Nor do we think he did so by claiming, though erroneously, that he was elected because of receiving a plurality of the first choice votes. The provision in the municipal court act for holding over is not affected by article 7, § 9, of the Constitution making the first Monday in January the beginning of the official year. It may be conceded that the provisions as to holding over are unavailing to county officers under this constitutional provision where the term is fixed by statute. In State v. Billberg, 131 Minn. 1, 154 N. W. 442, it was held that a county office became vacant in accordance with the constitutional provision cited, the court following State v. McIntosh, 109 Minn. 18, 122 N. W. 462, 126 N. W. 1135. Reference was made to the case of Taylor v. Sullivan, 45 Minn. 309, 47 N. W. 802, 11 L.R.A. 272, 22 Am. St. 729. There, apparently not having in mind the constitutional provision, it was held that the relator, the prior incumbent of the office of county attorney, had the right to hold over against the respondent, who was adjudged in *quo warranto* ineligible because not an elector, and the court said: "If the election of the respondent was not legally authorized, the relator would continue to hold the office by force of this express provision of the statute." This case is direct authority for a holding under the municipal court act, which the constitutional provision cited does not affect, that the former incumbent held over upon the judicial determination that the respondent was not elected. The holding in Taylor v. Sullivan was followed in State v. Weber, 96 Minn. 422, 105 N. W. 490, 113 Am. St. 630, and a judgment of ouster was entered. At the time of both these decisions the vacancy statute was in force. No reference to it was made. We are of the opinion that the adjudication that Judge Smallwood was not elected did not create a vacancy as against the claim of one under a hold-over provision. We do not attempt to define a "void" election such as creates a vacancy; but we apprehend that it has not been the understanding of the bar or of the courts that an otherwise effective hold-over provision is rendered ineffective by the vacancy

statute upon it being judicially determined that the election of a candidate, who had taken possession, was invalid, because of his ineligibility, or because the election was in itself invalid, or because for other similar reason the incumbent was not legally elected. Instances should be considered as they arise.

In leaving this feature of the case we pass without comment the suggestion that the statute of 1913 is subsequent to the statute relative to vacancies; and that it amends a special act affecting only the municipal court of Duluth and providing specially that the municipal judge shall hold his office "until his successor shall be elected and qualified."

We think the statute is without application; and to sustain his appointment Judge Smallwood must look to the Constitution.

5. The municipal court of Duluth was created by the legislature under authority of article 6, § 9, of the Constitution which is as follows:

"All judges other than those provided for in this Constitution shall be elected by the electors of the judicial district, county, or city, for which they shall be created, not for a longer term than seven years."

This provision does not call for interpretation. Its meaning is plain. The municipal judge is *elective*. He cannot be elected for *a longer term than seven years*. So, if the effect of the legislation of 1913 was to make the office other than elective, within the constitutional sense, or to make Judge Windom's terms exceed seven years, it was unconstitutional. This is our next inquiry.

6. The legislature, in adjusting terms of offices, may change the date of the election, if the real purpose be an adjustment, and the change be not unreasonable, though it thereby incidentally extends the period of service of the incumbent, without offending the command of the Constitution that the office be elective. This was definitely held in Jordan v. Bailey, 37 Minn. 174, 33 N. W. 778. No more than this was involved and no more was decided. The rule stated is not universal but probably it is the prevailing one. People v. Bull, 46 N. Y. 57, 7 Am. Rep. 302, is a leading case opposed to it. Since Jordan v. Bailey requires discussion in another connection we pass it with the remark that it is controlling against the relator upon its contention that the statute of 1913, by changing the date of election, affected the elective character of the office.

Of course a change in the date of the election must not contravene the limitation as to the length of the term.

7. Whether the legislature by changing the date of election to a time beyond the term fixed by the statute, providing that the incumbent shall hold until his successor is elected and qualified, and thereby, if there is a failure to elect, give the incumbent a term of office in excess of the constitutional period, is the question determinative of this proceeding; and it is the one which has chiefly engaged the attention of counsel and is most discussed in their briefs. Its consideration requires a reference to certain statutes relative to the organization of the municipal court, and a consideration of the few cases which have a helpful application.

The municipal court was created by Sp. Laws 1891, p. 595, c. 53, though there was a prior municipal court act not necessary to be considered here. There have been amendments. Judge Windom was last elected in 1912. The municipal court act then provided as follows:

"Sec. 4. There shall be one judge of said municipal court to be called municipal judge. The present judge of said court shall continue in office during the term for which he was elected, and until his successor shall be elected and qualified. The qualified electors of the city of Duluth shall, at the general city election to be holden on the first (1st) Tuesday in February, in the year one thousand eight hundred and ninety-two (1892), and on the day of the general city election every third (3rd) year thereafter, elect a suitable person, with qualifications hereinafter mentioned, to the office of municipal judge, who shall hold his office for a term of three (3) years, and until his successor shall be elected and qualified." Laws 1907, p. 324, c. 239, § 4.

Prior to the expiration of Judge Windom's last term and on March 24, 1913, the municipal court act was amended. Laws 1913, p. 107, c. 102. This amendment provided for a four-year term to commence in April, 1915, in lieu of the three-year term, the incumbent, Judge Windom, to hold until such time and until his successor was elected and qualified, and the judge then elected to hold until his successor should be elected and qualified; and it further provided for an election to fill such office at each fourth year thereafter, commencing with the first Tuesday in April, 1915. After the amendment of 1913, section 4, so far as here important, was as follows:

"Sec. 4. There shall be one judge of said municipal court, to be called municipal judge. The present judge of said court shall continue in office during the term for which he was elected, and until his successor shall be elected and · qualified. The qualified electors of the city of Duluth shall, at the general municipal election to be holden on the first (1st) Tuesday in April, in the year one thousand nine hundred and fifteen (1915) and on the day of the general municipal election every fourth (4th) year thereafter, elect a suitable person, with qualifications hereinafter mentioned, to the office of municipal judge, who shall hold his office for a term of four (4) years, and until his successor shall be elected and qualified." Laws 1913, p. 107, c. 102, § 1.

The effect of this piece of legislation, changing the time of election from February to April, was to permit Judge Windom to hold beyond his three-year term, and until his successor was elected on the first Tuesday in April, 1915, and if none was then elected, until the election on the first Tuesday in April, 1919, assuming as we now do that an election could not be held in April, 1917. The necessary effect of this hold-over provision was to give Judge Windom, in case a successor was not elected at the April, 1915, election, more than a seven-year term. The statute extended his three-year term. It is not fair reasoning to say that by virtue of the hold-over provision prior to the 1913 act Judge Windom would have held over in the same way. The statute did extend the three-year period by postponing the election to a date subsequent to the expiration of his term. Of necessity if Judge Windom held until the election on the first Tuesday in April, 1915, his term was extended, and if he then held over until his successor was elected and qualified, and none was elected or could be elected for four years from April, 1915, the legislation resulted in a term two months in excess of seven years. The question is upon the constitutionality of such legislation.

The respondent relies upon Jordan v. Bailey, 37 Minn. 174, 33 N. W. 778, referred to in the preceeding paragraph and left for further discussion here.

The case cited was a proceeding in *quo warranto* original in this court. The respondents, Judge Bailey and Judge Mahoney, were elected municipal judges of Minneapolis in April, 1883, for the term of four years, and until their successors were elected and qualified. The act of 1885,

(Sp. Laws 1885, p. 237, c. 74, § 3), amending Sp. Laws 1874, p. 362, c. 141, § 2, as amended by Sp. Laws 1883, p. 182, c. 48, § 2, by virtue of which the respondents were elected and were entitled to hold for four years, until their successors were elected and qualified, provided for an election every six years, commencing with the city election in 1883, that is, in 1889, and extended the respondents' term until that time. The relators, claiming that the amendatory act of 1885 was invalid, were elected in 1887, and claimed title to the office. It was held, and the holding went quite far enough, that the statute changing the term and rearranging the time of elections and conveniently extending the respondents' terms was not unconstitutional. The case was instituted prior to the election of 1889 and the only question involved was whether the respondents' terms could be extended from four years to six years without affecting the elective character of the office within the meaning of Const. art. 6, § 9. There was no question as to the constitutionality of the hold-over provision of the old four-year term, or of the new six-year term, or of any hold-over provision. There could not be. The respondents were not claiming the right to hold so long as seven years. They only claimed the right to hold the two years added to the four years against the contention that such addition destroyed the elective character of the office. Judge Windom is claiming to hold in excess of seven years.

An examination of the brief of counsel for the relators in the case cited is proof that only the question of the extension of the term of an incumbent, so as to offend the provision of the Constitution making the office elective, was in mind. The brief says [pp. 2-4]:

"The intention of the framers of the Constitution is clear and unmistakable to place the election of all judges in the hands of the people. The election of judges by the people is rigidly preserved, and especially in the clause set forth above. [Const. art. 6, § 9.] * * * The legislature had the undoubted power to create the office; to fix the period of service of the judges; to regulate their compensation and everything incidental thereto; but having prescribed a fixed term of four years, and having authorized the people to elect for that term, they could not legally extend the term as applied to present incumbents."

No reference is made to the constitutional question now under consideration. It was not of consequence in the case. The relators relied

upon People v. Bull, supra, which the court refused to follow, and this case bore only upon the elective character of the office as fixed by the Constitution. Jordan v. Bailey is not authority for a holding that the legislature may constitutionally extend the period of office beyond seven years by changing the date of election and continuing the incumbent in office until the next election with a hold-over provision. Indeed, we may justly infer that had the term there involved been extended beyond seven years by the change in the date of the election the holding would have been different; for the court, when it says that the office is within the control of the legislature, says it is so subject to the provisions of the Constitution *"making the office elective, and limiting the term to seven years."*

It seems quite clear that the legislature cannot extend an office beyond the constitutional term by a hold-over provision. Thus, in State v. Clark, 87 Conn. 537, 89 Atl. 172, 52 L.R.A.(N.S.) 912, the facts were about these: The Constitution, article 5, § 3, provided that "judges of the City Courts and Police Courts shall be appointed for terms of two years." The charter of Hartford provided "that the judge and associate judge of the city police court within and for the city of Hartford shall each hold office for the term of two years * * * and until his successor shall be duly appointed and qualified." The court held that the words "until his successor is duly appointed and qualified" were in contravention of the Constitution and that a vacancy existed. In Commonwealth v. Sheatz, 228 Pa. St. 301, 77 Atl. 547, 50 L.R.A.(N.S.) 374, 21 Ann. Cas. 54, these facts appear: Sheatz was state treasurer and his term was fixed by the Constitution at two years. There was no hold-over provision. The Governor had authority to fill a vacancy. The assembly passed an act providing that "the term of office of the state treasurer shall hereafter commence on the first Monday of May next succeeding his election, and shall continue for two years, or until his successor shall be duly qualified." It was held that the attempt to extend the office beyond two years was unconstitutional. And see State v. Brewster, 44 Oh. St. 589, 9 N. E. 849, and note to State v. Plasters, 74 Neb. 652, 105 N. W. 1092, 13 Ann. Cas. 154, in 3 L.R.A.(N.S.) 887.

The case of State v. Compson, 34 Ore. 25, 54 Pac. 349, is cited by respondent. Section 2 of article 15 of the Oregon Constitution provided

that "the legislative assembly shall not create any office, the tenure of which shall be longer than four years." The board of railroad commissioners, by legislative act, held their offices "for and during the term of two years and until their successors are elected and qualified." The legislative assembly chose Compson on February 17, 1893, for a two-year term and in 1895 there was a failure to appoint a successor so that Compson held two years longer, or a total period of four years. The argument was made that, at the expiration of four years, the office became vacant under the Constitution, notwithstanding the provision of the statute that the incumbent should hold until his successor was elected and qualified. The court said:

"The logic of the argument is that the legislature may create an office the term of which shall be four years, and may reserve to itself the right to select the incumbent; but it is inhibited, as between the officer and the appointing power, from providing that the incumbent of such office shall hold after the expiration of that time, or until his successor is elected and qualified. This position is probably sound, unless Section 1 of Article 15 of the Constitution, which provides that 'All officers, except members of the legislative assembly, shall hold their offices until their successors are elected and qualified,' applies to the office of railroad commissioner."

The court held that the Constitution applied to this office and, therefore, construing the two provisions of the Constitution, that the incumbent could hold until his successor was qualified. This case gives no support to the respondent. By implication it supports the relator. The respondent relies upon Spencer v. Knight, 177 Ind. 564, 98 N. E. 342. The Constitution of Indiana (article 15, § 2), provided that the general assembly should not create any office "the tenure of which shall be longer than four years." Section 3 of the same article provided that whenever the Constitution or any law fixed a term of office other than a member of the general assembly for a given term it should be construed to mean that "such officer shall hold his office for such term and until his successor shall have been elected and qualified." Construing together these two provisions there was no difficulty in holding that a legislative extension of a term of office beyond four years by a provision for hold-

ing over would not conflict with the Constitution. The court referring to article 2, § 15, said:

"This provision * * * adds an additional contingent and defeasible term to the original fixed term, and the right to hold over comes from it and not from the act regulating the time of holding the election for the office except as it opens the way for the operation of the constitutional provision."

The court, it is true, refers to statutes postponing elections and providing for the incumbents holding over as if constitutional and cites cases; but no case among those cited supports the proposition that the legislature may, by a hold-over provision, increase the constitutional term; and we take it that the supreme court of Indiana, under the statute and constitutional provision quoted, is committed to the doctrine that the holding over finds its justification in the Constitution and not in the statute. State v. Menaugh, 151 Ind. 260, 51 N. E. 117, 357, 43 L.R.A. 408, 418. The case of People v. Tilton, 37 Cal. 614, seems to support respondent's contention and it is followed in People v. Edwards, 93 Cal. 153, 28 Pac. 831. We do not see that Crowell v. Lambert, 9 Minn. 267 (283), aids respondent. Some loose language in it favors him but no law.

The limitation of the Constitution upon the right of the electors to elect a municipal judge is that he shall not be elected "for a longer term than seven years." Prior to the legislation of 1913 the term of office was three years, with a provision that the judge elected should hold until his successor was elected and qualified. In no case was the result of this legislation to give the judge elected a term longer than seven years. It may be conceded, in harmony with the general policy of the law, that, if no election was had in a particular year and the judge held over, he would hold only until the next annual election, for until 1913 Duluth had annual elections; and there was nothing in the municipal court act which prevented a judge holding over from being elected at the next annual election. In 1913 the act was so changed as to make the term four years, and it was studiously provided—so studiously that we cannot ignore the intent of the legislature—that this four-year term should commence in April, 1915, the obvious purpose being to provide for the election of the municipal judge at one biennial election, and the

election of the special judge and the assistant judge at a different biennial election. There was not to be a time when all three judges would be elected at the same election. The commission charter of Duluth adopted in December, 1912, provided for biennial elections only.

That the term cannot constitutionally extend beyond seven years we must concede, if we yield obedience to the limitation of the Constitution. The difficulty comes in ascertaining the precise effect of such holding on the peculiar situation before us. There are four results suggested:

(a) That while the whole term exceeds seven years, and therefore the statute is infected with unconstitutionality, it should be held unconstitutional only as to the period in excess of seven years, leaving the incumbent to hold until the expiration of that time, in this case until February, 1919, when there would be a vacancy and might be an appointment.

That this would result in great confusion is manifest. It is not a result which should be favored. That an argument may be made for it is evidenced by respondent's brief and the authorities which he cites. Sinking Fund Commnrs. v. George, 104 Ky. 260, 47 S. W. 779, 84 Am. St. 454; State v. Long, 21 Mont. 26, 52 Pac. 645.

We recognize the general rule that an election or an appointment for a longer term than the Constitution fixes may be valid to the extent of the constitutional term, and we understand its application. It is suggested that our holding affects the county officers of the state who are now holding under a statute fixing their terms at four years from the first Monday in January, 1915, and until their successors are elected and qualified. Laws 1913, p. 668, c. 458, and see amendment, Laws 1915, p. 233, c. 168. This is not our understanding at all. The suggestion is based upon State v. McIntosh, 109 Minn. 18, 122 N. W. 462, 126 N. W. 1135, which, assuming to follow State v. Frizzell, 31 Minn. 460, 18 N. W. 316, construing article 7, § 9, of the Constitution making the official year commence on the first Monday of January and all offices terminate then, held that a county commissioner, because of the constitutional provision, did not hold over after such date though the statute provided for a hold-over. Our holding in no way affects county officers, nor do we understand that a hold-over provision attached to their terms of office, if ineffective, affects the original term; nor do we

understand that an election for a longer term than the Constitution provides is not an election for the constitutional term; nor should anything in this opinion be understood as questioning the constitutional validity, under Const. art. 7, § 9, of the statutes of 1913 and 1915 increasing the terms of county officers from two years to four years. We do hold that when the legislature passed the act of March 24, 1913, extending Judge Windom's term of office, with a restriction on the right to fill it by election before a date when a period in excess of seven years, would pass, it was an unconstitutional extension of his term, and that the additional period given was void. This is referred to again.

(b) That the entire statute of 1913, changing the time of election and providing for a four-year term, is unconstitutional and that the municipal court act is as it was before 1913.

If this be so the incumbent's office is for three years. The time of election is in February. The hold-over is until the next annual election. The term of office of the special judge is three years. There is no provision for annual elections in the charter. And the office of assistant municipal judge is without constitutional authority and he should be ousted. If the substance of the statute can be given effect, though it be unconstitutional in a minor particular, the court should so hold it, rather than make a holding necessitating the results just stated because of entire unconstitutionality.

(c) That the incumbent holds over, but only until the next biennial election after the failure to elect, when his successor will be elected; in this case until the biennial election in 1917.

The difficulty of such a holding is that the legislature has not provided for the election of a municipal judge at the close of the first biennial election after April, 1915, and has distinctly and industriously provided that there shall be none. There is no way of construing the statute to intend one. We cannot, in order to hold the statute constitutional, construe it to mean one, when plainly it does not—when plainly it is inconsistent with such intention. If there were two reasonable constructions the law would favor the one making the statute constitutional. Here such principle it without application. If the statute is held unconstitutional it is so held because of the hold-over provision, being uncon-

131 M.—27.

stitutional, the defeasible term dependent upon it falls with it, leaving a vacancy.

It is true that, if the incumbent involved was an appointee instead of one holding over, it might be held under the constitutional provision for an appointment by the Governor that the election of a successor be held at the next election. This matter is referred to in another connection.

(d) That the provision for a hold-over is unconstitutional and that there is a vacancy at the end of the term fixed.

There is no difficulty in holding, the term of office being unconstitutional because of the provision for holding over, that the hold-over provision is unconstitutional and that the defeasible term which it creates falls with it. The construction we adopt is that the hold-over provision is unconstitutional, that because of it the four-year defeasible term, which has no vitality except such as it derives from it, falls with it, and that a vacancy occurred upon a failure to elect in April, 1915. This is the natural and straightforward holding. It works no unnecessary confusion. It is not strained. It is simply a holding that the legislature, by the statute of 1913, by changing the date of election, and continuing the then incumbent in office, necessarily made a term in excess of seven years if he held over. It does not result in a holding that the incumbent could not rightfully continue in office until the Governor's appointment.

Briefly stated, and with some repetition, the situation is just this: On the first Tuesday in February, 1912, Judge Windom was elected municipal judge for the term of three years "and until his successor shall be elected and qualified." On March 24, 1913, the legislature provided for a municipal election to be held on the first Tuesday in April, 1915, at which the successor of Judge Windom should be elected, and provided that a municipal judge should be elected "on the day of the general municipal election every fourth (4th) year thereafter." It further provided that the then judge, which meant Judge Windom, should continue in office for the term for which he was elected and "until his successor shall be elected and qualified." If a successor was not elected in 1915, and if none could be elected in 1917, the effect of this statute was to make Judge Windom hold for a period of seven years and two

months. This was absolutely determined when the 1913 act was passed. The legislature saw that if the hold-over provision became effective because of a failure to elect in 1915 Judge Windom's term, which he was then filling, would exceed seven years, and the legislation which it enacted, if held valid, brought this result. We hold that an election of a successor to the municipal judge cannot be held under the present statute in 1917, or until 1919, if it is given effect according to its terms. We are not now referring to the election of a judge to succeed one appointed by the Governor under the Constitution. The necessary effect of the act of 1913 being to make the incumbent hold seven years and two months, if there was no election in 1915, and none for a successor could be had in 1917, it is unconstitutional.

In the investigation which has brought us to this conclusion, we have had continuously in mind the presumption of constitutionality which attends legislative acts and that, as said by Justice Philip E. Brown in State v. City of Mankato, 117 Minn. 458, 136 N. W. 264, cited by counsel for respondent, "the voice of the legislature is the voice of the sovereign people, and that, subject only to such limitations as the people have seen fit to incorporate in their Constitution, the legislature is vested with the sovereign power of the people themselves." But effect cannot be given to legislative intent which disregards the limitations of the Constitution.

8. By article 5, § 4, of the Constitution, it is provided that the Governor shall "fill any vacancy that may occur in the office of secretary of state, treasurer, auditor, attorney general, and such other state and district offices as may be hereafter created by law, until the next annual election, and until their successors are chosen and qualified."

Under this provision there is no question of the authority of the Governor to appoint upon the occurrence of a vacancy in the office of municipal judge, and, a vacancy having occurred, the Governor's appointment of Judge Smallwood gave him title to the office.

In State v. Frizzell, 31 Minn. 460, 18 N. W. 316, at page 465, the court, having in mind article 6, § 10, of the Constitution, said:

"There is no provision in the Constitution for filling by appointment a vacancy in the office of a judge caused by the expiration of the regular term for which he was elected."

The court was there considering the various amendments to articles 5, 6 and 7 of the Constitution, as proposed by chapters 1, 2 and 3, pp. 5, 6, 7, Laws 1883. What was there said has no bearing on an appointment made under article 5, § 4, of the Constitution.

9. The provision in the Constitution that the Governor shall fill a vacancy "until the next annual election" uses the word "annual" in the sense of regular—that is, an election held in usual course at which with propriety the office may be filled though no provision is made by statute for filling it then. Therefore a successor to one appointed municipal judge should be elected at the next regular election and so far the statutory provision for an election only at four-year intervals must yield. It may be noted in this connection that it is also the legislative policy to elect in case of a vacancy, at the next election. R. L. 1905, § 2671 (G. S. 1913, § 5727). Whether the legislature can so provide that the two elections, one of the municipal judge and the other of the special judge and the assistant judge, shall be held at different biennial periods, when a vacancy occurs making an election necessary out of the usual order, we do not inquire. To put it concretely Judge · Smallwood's appointive term will expire in April, 1917, and the one then elected will be elected for a term of four years and not to fill the unexpired portion of a four-year term.

10. To avoid misunderstanding as to the method of electing the municipal judge it is proper to say that, the statute and the charter remaining as they now are, the election of the municipal judge should be had under the general election law with a nonpartisan ballot and the machinery which the statute provides. We do not say that a method may not be provided by the charter different from this. In Brown v. Smallwood, 130 Minn. 492, 153 N. W. 953, we held that the fact that the municipal judge was a state officer did not prevent making use of the election machinery provided by the city. This was stated broadly in view of the claim there made that the statute did not intend to apply the election machinery of the city to the election of the municipal judge, a state officer. It will not be overlooked that, by the Constitution, the commission form of charter must be consistent with and subject to the laws of the state. Const. art. 4, § 36.

11. To avoid useless controversy or litigation it is proper to say that

the official acts of the relator and the respondent in their various incumbencies of the office are valid. All the time there has been a *de jure* office of municipal judge. All the time there has been a *de facto* judge filling the office. The acts of a *de facto* judge, actually occupying the office and transacting business, are valid. State v. McMartin, 42 Minn. 30, 43 N. W. 572. In the actual incumbencies since the April, 1915, election, the official acts of the incumbent, whether Judge Windom or Judge Smallwood, occupying the office and exercising its functions, are valid.

Let a writ of ouster issue.

HALLAM, J. (concurring).

I concur in the result.

I do not concur in the proposition that the provisions of the Duluth charter that a municipal judge shall hold over after the expiration of his term until his successor is elected and qualified, is wholly void because the term and the hold-over period together might exceed the constitutional limit of seven years in the contingency of failure of election and qualification of a successor within that time. The hold-over provision is valid, except insofar as it conflicts with the Constitution. The conflict is as to any excess over seven years, and the provision is void only as to any excess. This is the rule favored by the authorities. 29 Cyc. 1396; Sinking Fund Commrs. v. George, 104 Ky. 260, 274, 47 S. W. 779, 84 Am. St. 454; State v. Long, 21 Mont. 26, 52 Pac. 645. See also State v. Bates, 108 Minn. 55, 57, 121 N. W. 225; and this seems to me to be the practical and reasonable rule. As a matter of fact county officers in every county in the state are today holding under a statute fixing their term at four years from the first Monday in January, 1915, and until their successors are elected and qualified. G. S. 1913, § 810. That term exceeds the constitutional limit fixed by section 9, art. 7, of the Constitution, which permits of no hold-over at all in such offices. State v. McIntosh, 109 Minn. 18, 122 N. W. 462; State v. Billberg, 131 Minn. 1, 154 N. W. 442. Similar statutory provisions have been common in the past. R. L. 1905, §§ 481, 494, 530, 546, 563, 582, 599. But it has never been considered that such statutes are void except as to the excess over the constitutional limit.

My opinion is that a vacancy existed in the office of municipal judge by virtue of the provisions of G. S. 1913, § 5723, that "every office shall become vacant on the happening of either of the following events * * * :

1. The death of the incumbent. * * *

6. His refusal or neglect to take the oath of office or to give or renew his official bond. * * *

7. The decision of a competent tribunal declaring his election or appointment void."

In my opinion the seventh subdivision of section 5723 is applicable to this case and its operation necessarily limited the hold-over provisions of the Duluth charter. In the absence of section 5723 failure of election or qualification of a successor would not create a vacancy, but the hold-over official would continue to hold over until another election, or as long as permitted by the Constitution.

Section 5723 was designed to prevent just such a result. Instead of leaving the hold-over official in office until a succeeding election, it provides that the office shall become vacant, if, after the election, the incumbent fails to qualify or his election is judicially declared void. This statute operates to terminate the tenancy of the hold-over officer in either of these events.

It seems to me there should be little doubt as to the meaning of this section. The language is not well chosen. Strictly speaking there cannot be such a thing as an "incumbent" who has neither taken the oath of office nor given a required official bond, nor an "incumbent" whose election is void. But the term incumbent can be given no narrow construction. As used in the sixth subdivision, it has been held to include a person elected, but not qualified. County of Scott v. Ring, 29 Minn. 398, 13 N. W. 181. As used in the seventh subdivision, it is intended to include one who is declared elected at an election but whose title is, by reason of some frailty in the election, judicially declared void.

In this case an election was held on a regular election day, for the election of a municipal judge. Judge Smallwood was declared elected by the proper election officials, and received the usual certificate of election. Under well settled rules of law he was entitled to the possession of the office until his title was found defective. State v. Sherwood, 15 Minn. 172 (221). He was an incumbent within the meaning of sub-

division 7, section 5723, and by force of that statute the judgment of the court declaring the election void created a vacancy.

What few authorities there are sustain this position.

It is held that one in office, who is a candidate for re-election and has received the certificate of election and qualifies and acts thereunder, cannot, after the election had been declared void, be heard to say either that he was holding over or entitled to hold over under a former election by virtue of the hold-over provision of a statute. 29 Cyc. 1400; Farrell v. City of Bridgeport, 45 Conn. 191; Handy v. Hopkins, 59 Md. 157; Ex Parte Gray, Bailey Eq. (S. C.) 76.

Under a statute the same as ours it has been held that the office becomes vacant on the decision of the court declaring an election void on the ground that the person declared elected was ineligible. Campbell v. Board of Suprs. of Santa Clara County, 7 Cal. App. 155, 93 Pac. 1061. A determination that the election was void because of violation of the corrupt practices act would beyond doubt have the same effect. See State v. Billberg, 131 Minn. 1, 154 N. W. 442. It can make no difference on what ground the election is adjudged void. The statute makes no distinction between an election declared void because of ineligibility or personal misconduct, and one declared void because of a wrong method of voting. It is the decision of a competent tribunal declaring the election void, and not the ground of the decision, that creates the vacancy. The purpose of section 5723 is to create a vacancy in all cases where the old official has exhausted the term for which he was elected and an election has been held to choose a successor, even though the successor chosen refuses to qualify or the election be wholly void.

Taylor v. Sullivan, 45 Minn. 309, 47 N. W. 802, 11 L.R.A. 272, 22 Am. St. 729, is not an authority against this view. In the decision in that case no mention is made of the "vacancy" statute. A constitutional provision that would have been decisive of the case was overlooked. See State v. Billberg, supra. It is quite apparent that the "vacancy" statute was likewise overlooked.