PARKS: BOARDS: HENNEPIN COUNTY: TERMS OF MEMBERS: Terms of members appointed by county board expire on January 1. They may continue in de facto capacity until successors are selected. Minn. Stat. §§ 383B.68, 383B.69 (1990).

330-c-3

January 4. 1993

Jeffrey R. Brauchle
Attorney for Suburban
Hennepin Regional Park District
Oppenheimer. Wolff & Donnelly
Plaza VII
45 South Seventh Street
Suite 3400
Minneapolis. MN 55402

In your letter to the office of the Attorney General you set forth substantially the following:

## FACTS

Minn. Stat. § 383B.68 states that the board of park district commissioners shall consist of seven commissioners. five of whom are elected and two of whom are appointed by the board of commissioners of Hennepin County.

On January 17, 1989. one of the two appointed park district commissioners was unanimously reappointed to serve on the Suburban Hennepin Regional Park Board. Although Minn. Stat. § 383B.69 states that the appointee was to serve until January 1, 1989, his reappointment was not made until January 17, 1989. Pursuant to Minn. Stat. § 383B.68, each appointed park district commissioner shall serve a "four-year term."

You then ask substantially the following:

## QUESTION ONE

May the appointed commissioner holdover after his term expiration date until a successor is appointed and qualifies?

## OPINION

In our view. an incumbent may continue to serve as a de facto member following expiration of their term until a successor is appointed. The statutory sections for replacing

commissioners of the Suburban Hennepin Regional Park District are found in Minn. Stat. § 383B.68 (1990) and Minn. Stat. § 383B.69 (1990). The procedures for replacements for appointed commissioners are as follows:

> Subd. 2. Two park district commissioners shall be appointed by the board of commissioners of Hennepin County. An appointee must be a resident of the Hennepin county park reserve district in order to qualify and serve as a park district commissioner. Each park district commissioner appointed pursuant to this subdivision shall serve a four-year term. If a vacancy occurs among the commissioners appointed pursuant to this subdivision, the board of commissioners of Hennepin county shall appoint a successor.

There is no express statutory holdover provision with respect to appointed commissioners. In contrast, Minn. Stat. § 383B.68, subd. 3, which sets the procedures for elected commissioners includes a holdover provision:

> Each park district commissioner elected pursuant to this subdivision shall be a resident of the district represented and shall serve for a term of four years and until a successor is elected and qualifies . . . .

It appears that, as part of a comprehensive rewriting of subdivision 2, the legislature in 1985 deleted the phrase "and until a successor is appointed and qualified." See Act of June 28, 1985, 1st Spec. Sess., ch. 14, art. 722, 1985 Minn. Laws at 2470-71.[1]

---

1.  The amendment altered the subdivision as follows:

    Subd. 2. Three Two park district commissioners shall be appointed by the park and board of the city of Minneapolis from among its membership board of commissioners of Hennepin county. An appointee must be a resident of the Hennepin county park reserve district in order to qualify and serve as a park district commissioner. Each park district commissioner appointed pursuant to this subdivision shall serve for a four-year term coinciding with his term on the park and recreation board of the city of Minneapolis, and until a successor is appointed and qualifies. If a vacancy occurs among the commissioners appointed pursuant to this subdivision, the park and recreation board of the city of Minneapolis commissioners of Hennepin county shall appoint a successor.

Thus, a reading of subdivision 2 in contrast with subdivision 3 might suggest that there is intended to be no holdover for the appointed commissioners. However, it is our opinion that the statute should not be so construed. It appears that the deletion of the holdover language was intended to address the change from membership including city park commissioners whose terms had been fixed to coincide with their terms on the city board to commissioners appointed at large for a fixed term, rather than expressly to preclude any holding over.

Even without an express provision for formally extending the term, we believe that existing members can continue to act in their positions until successors are in place. This position is supported by case law in Minnesota in which courts have, in other contexts, recognized that public interest be taken into consideration in deciding whether officers may continue to perform the duties of office after the expiration of their terms.

In Van Cleve v. Wallace, 216 Minn. 500, 13 N.W.2d 467 (1944), the court held that the past president of the city council should continue in office until the council elected a new president. The court listed several factors as to why the incumbent president should hold over: respondent had taken the oath of office prior to the expiration of his term, there was no actual break between his two terms, and the council was evenly divided and unable to elect a successor to him. Van Cleve, 216 Minn. 500, 515, 13 N.W.2d at 472.

The court also stated that their decision best serves and protects the interest of the people of Minneapolis. The court quoted from a previous case, wherein they stated that:

> [i]t is undesireable and out of accord with judicial determination, from the earliest times, that any interregnum should be allowed to exist in the transition of forms of government or change of officers . . . . Questions involving government must not be determine along technical lines. Practical and broad considerations should control.

Woodbridge v. City of Duluth, 121 Minn. 99, 102, 140 N.W. 182, 183 (1913).

Similarly, although the court held that a holdover provision which allowed a clerk of court to hold over for seven years and two months was unconstitutional, the court in Smallwood v. Windom, 131 Minn. 401, 406, 155 N.W. 629, 631 (1915), stated that their decision should not be used to infer that "one in office for a definite term without a hold over provision may not, upon the occurrence of a vacancy, continue to perform the duties of his office until action by the appointing power." The court reasoned that "there is still a de jure office and in the interest of the public service it may be that the incumbent should continue the performance of his duties." Id.

The apparent distinction which has been made is between officers holding over in de facto or de jure status. This distinction was discussed in Op. Atty. Gen. 618a-2, February 6, 1959, wherein we concluded that Regents of the University of Minnesota, whose terms had expired, served as de facto officers until successors were selected. We there followed the reasoning of the Connecticut court in State ex rel. McCarthy v. Watson, 132 Conn. 518, 45 A.2d 716 (1946):

> If, by constitutional provision or valid statute, a definite term is established for an office without provision that the incumbent shall continue in office after its expiration, he will, in holding over, be a de facto and not a de jure officer, and a vacancy will result which may be filled by the appointment, under proper authority, of a successor. If, however, the term of office is not only for a definite time but until a successor is appointed and qualified, an incumbent holding over is a de jure officer and unless, from the particular language of the statute or the particular circumstances of the case, a different legislative intent appears, there is no vacancy in the office within a provision authorizing an appointment in such a contingency.

Id. 45 A.2d at 720-21.

It might be argued that, inasmuch as the status of de facto officer, by technical definition, is not based upon direct statutory authority, it should not be said that such officers are in any sense legally authorized to continue in office after the expiration of his or her term. However, the foregoing authorities appear to go beyond mere tolerance of unauthorized tenure

to suggest that such incumbents may, and in some circumstances should, continue to perform the assigned duties until a successor is available.

Other jurisdictions as well have supported the notion that incumbents may hold over in de facto status absent provisions to the contrary. See McQuillan, Municipal Corporations, § 12.105 (3d Ed.). Under this policy, an elected or appointed officer may remain in office after the expiration of its term until a successor qualifies, whether or not this is provided by the statute creating the office.

For example, a Maryland court has stated that:

> The controlling, if not the sole, consideration has been that the law requires, in the public interest, that the offices be filled at all times, without interruption, and to this end the intention and understanding that incumbents shall hold until their successor qualify has grown up and taken position as part of the law.

Reed v. President and Comm'r of Town of North East, 172 A.2d 536, 542 (Md. App. 1961).

Consistent with this generally held view that incumbent officers may hold over, and absent a statutory or constitutional provision to the contrary, it is our opinion that commissioners appointed pursuant to Minn. Stat. § 383B.68, subd. 2, should be allowed to continue to perform the duties of office until a successor is appointed and qualifies.

You then ask substantially the following:

## QUESTION TWO

Does the appointed commissioner's four-year term expire on January 1, 1993 or January 17, 1993?

## OPINION

In our opinion, the appointed commissioner's four-year term expires on January 1, 1993. The specific provision of Minn. Stat. § 383B.68, subd. 2, standing alone would suggest that the appointee should serve a four-year term measured from the time of appointment. However, Minn. Stat. § 383B.69 which establishes the initial transition to the current Board

Jeffrey R. Brauenle
Page 6


structure indicates an intent to establish and maintain a staggered rotation of appointed terms. expiring on January 1 of each odd-numbered year. This rotation would ultimately be destroyed, however, if each member appointed would serve for four years from his or her actual appointment date.[2] Consequently, it is our view that the terms technically expire on January 1.

Very truly yours.

HUBERT H. HUMPHREY III
Attorney General


KENNETH E. RASCHKE JR.
Assistant Attorney General

KER:gpp

---

2.    Cf. Op. Atty. Gen. 618a-2, March 8, 1965, where we also reached the conclusion that terms of University Regents expired in accordance with a fixed staggered schedule.