PAGE, Justice
(dissenting).
I respectfully dissent.
One of the core constitutional requirements for serving as a district court judge in Minnesota is that the judge must reside in her district during her continuance in office.[1] Article VI, Section 4, of the Minnesota Constitution, states in no uncertain terms: “Each judge of the district court in any district shall be a resident of that district at the time of [her] selection and during [her] continuance in office.” (Emphasis added.) In In re Karasov, we determined that Judge Karasov did not reside in her judicial district from July 1, 2009, to September 30, 2009. 805 N.W.2d 255, 268 (Minn.2011). When Judge Kara-sov abandoned her residence within the Fourth Judicial District on July 1, 2009, she no longer met one of the two essential qualifications for holding office — the constitution’s residence requirement — and could not continue in office. It is because she no longer met the constitutional requirements for holding the office of district court judge in the Fourth Judicial District, and not for reasons of judicial discipline, that on July 1, 2009, Judge Karasov forfeited her judicial office. Having forfeited *524 her office, Judge Karasov was without authority to preside at the trial of appellant Jaimiah Lamar Irby. Because of this want of authority, I conclude that Irby’s convictions must be reversed and that his case be remanded for trial.
I.
While my analysis under Article VI, Section 4, resolves the question of whether Judge Karasov had the authority to preside at Irby’s trial, I would reach the same result applying Minn.Stat. § 351.02 (2012). First, unlike the court, I do not question the Legislature’s authority to provide for the removal or other discipline of judges. This authority is set out clearly in our constitution:
The legislature may also provide for the retirement, removal or other discipline of any judge who is disabled, incompetent or guilty of conduct prejudicial to the administration of justice.
Minn. Const. art. VI, § 9 (emphasis added).
It is undisputed that Judge Karasov violated the constitutional requirement that she reside in her district when she moved from her home in the Fourth Judicial District and, from July 1 through September 30, 2009, resided in Chisago City, which is in the Tenth Judicial District. See In re Karasov, 805 N.W.2d at 265, 268. We concluded in In re Karasov that by failing to reside in her district Judge Karasov violated Rule 1.1 of the Code of Judicial Conduct, which provides that “[a] judge shall comply with the law, including the Code of Judicial Conduct.” 805 N.W.2d at 268. We also determined that Judge Ka-rasov’s conduct -violated Rule 1.2 of the code, which states that “[a] judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.”[2] See In re Karasov, 805 N.W.2d at 268. It seems clear to me that such misconduct — which also, of course, directly violates the constitution’s residence requirement — was prejudicial to the administration of justice. Given the plain language of Article VI, Section 9, the court’s concern about legislative encroachment on our power to determine judicial discipline is misguided. In view of the constitution’s express grant of authority to the Legislature, there simply is no separation of powers question presented here. Thus, the only question is whether Minn.Stat. § 351.02(4) applies to the office of district court judge. I conclude that it does.
Minnesota Statutes § 351.02 provides, in pertinent part:
Every office shall become vacant on the happening of either of the following events, before the expiration of the term of such office:
[[Image here]]
(4) the incumbent’s ceasing to be an inhabitant of the state, or, if the office is local, of the district, county or city for which the incumbent was elected or appointed, or within which the duties of the office are required to be discharged.
Section 351.02 states that an office “shall become vacant” upon the happening of any one of several enumerated events, one of which is the officer’s “ceasing to be an inhabitant” of the district for which she was elected or appointed. The statute’s plain language indicates that it is the *525 change of residence itself that causes a vacancy as a matter of law. In this respect, the statute itself is the mechanism by which the underlying constitutional requirement of residency is given effect.[3]
As the court implicitly acknowledges, section 351.02’s expansive reference to “every office” must be construed to encompass the office of district court judge. See State ex. rel. Smallwood v. Windom, 131 Minn. 401, 407-08, 155 N.W. 629, 632 (1915) (applying predecessor statutes, Minn. Rev. Laws § 2667 (1905) and Minn. Gen. Stat. § 5723 (1913), to municipal judgeship). The court holds, however, that because a district court judgeship is not a “local” office, Judge Karasov’s conduct falls within the scope of section 351.02 only if she “ceas[ed] to be an inhabitant of the state.” Because she continued to reside within Minnesota at all times, the court concludes, section 351.02(4) has no application here.
In reaching its conclusion that section 351.02 does not apply in this case, the court either misreads or ignores the plain meaning of the words “local” and “district,” in violation of our canons of construction. “The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature.” Minn.Stat. § 645.16 (2012). When the words of a law are clear and free from all ambiguity, we may not disregard the letter of the law in pursuit of what we perceive to be its spirit. Id. When construing a statute, “words and phrases are construed according to rules of grammar and according to their common and approved usage.” Minn.Stat. § 645.08(1) (2012). The American Heritage Dictionary of the English Language defines the word “local” as: “a. Of, relating to, or characteristic of a particular place ...; b. Of or relating to a city, town, or district rather than a larger area: state and local government.” The American Heritage Dictionary of the English Language 1029 (5th ed.2011). “District” is defined most commonly as “[a] division of an area, as for administrative purposes.” Id. at 525. It is true that a district court judge is a state officer “in certain senses of the term.” See Brown v. Smallwood, 130 Minn. 492, 493-94, 153 N.W. 953, 954 (1915) (“It is conceded that the municipal judge is a state officer in certain senses of the term.”). Indeed, Article VI, Section 3, provides the district court with statewide jurisdiction over all civil and criminal cases. Moreover, district court judges serve within the judicial branch of state government. But none of that makes the office of judge of the Fourth Judicial District a statewide office.
By requiring that those who serve as district court judges be appointed to, or elected by the citizens of, a specific district and then live within “that” district rather than some other or larger area, our constitution’s framers clearly intended that judges reside in a particular place constituting a division of the state or geographic unit marked out by law within the state. Although not determinative, I would note that individual counties are required to furnish facilities for the district courts. Minn.Stat. § 484.77 (2012). I would also note that, although the district courts collectively exercise statewide jurisdiction, an individual district court judge may serve as a judge in a judicial district other than *526 her own only when expressly authorized to do so by the Chief Justice. Minn.Stat. § 2.724, subd. 1 (2012).
What is determinative is that those who hold the office of district court judge are elected from a particular place set out by law “by the voters from the area which they are to serve,” Minn. Const. art. VI, § 7; and those elections are local and of no particular concern to the rest of the state. For those appointed to the office of district court judge, the appointment must be to a particular area or place. Minn. Const. art. VI, § 4. And whether elected or appointed, our constitution mandates that judges reside within that particular area or place during their continuation in office. Id.
The court rejects this analysis, reasoning that state legislators are also elected from specific districts — in their case house or senate districts — but are considered state office holders. See Minn. Const. art. IV, § 6; Lundquist v. Leonard, 652 N.W.2d 33, 36 (Minn.2002). However, state legislators are elected to a state body — the Minnesota Legislature. See Minn. Const. art. IV. District court judges are elected to serve a specific district court and may only serve outside that district as noted above. See Minn. Const. art. VI, § 7; Minn.Stat. § 2.724, subd. I.[4]
The State contends that interpreting section 351.02(4) to include district court judges results in the automatic forfeiture of judicial office when the judge moves outside of her district. The State argues that such a “self-executing” statute would be inconsistent with the Legislature’s system for disciplining judges, which requires the Board on Judicial Standards to make disciplinary recommendations to this court. See Minn.Stat. §§ 490A.01-.03 (2012). The State maintains that, “[s]hort of legislative impeachment, the only way to remove a judge from office is by order of this Court.” Finally, the State observes that Minn.Stat. § 2.722, subd. 4(a) (2012), requires us to certify a vacancy to the Governor before the Governor can fill the vacancy. Based on this observation, the State argues that a judicial office cannot be forfeited until our court declares it vacant.
The State is wrong on all counts. First, the State’s contention that section 351.02 is “self-executing” is only true in the narrowest sense of the term. Our court has the ultimate authority to determine whether a judge resided outside of her district and, if so, when that change of residence occurred. Cf. Rule 14(e), Rules of the Board on Judicial Standards (describing our review of the hearing panel’s recommendation of discipline). Therefore, removing a judge from office still requires a decision from this court.
Second, this case illustrates that giving effect to section 351.02 does not circumvent the Legislature’s system for disciplining and removing judges. Consistent with *527 the statutory regime, the Board on Judicial Standards filed a formal complaint against Judge Karasov for living outside of her district, and a three-member panel held a hearing on the complaint and made a recommendation to this court. In re Karasov, 805 N.W.2d 255, 258-59, 263 (Minn.2011). This process conformed with the statutory regime the Legislature envisioned. See Minn.Stat. §§ 490A.01-.03.
I also note that the “self-executing” nature of section 351.02 is irrelevant to the correct construction of the plain language in subsection (4). The decision that a vacancy has arisen will always have a retroactive effect and in this sense the statute is “self-executing.” But that result does not alter the constitutional and statutory requirements for a district court judge to be elected or appointed from a particular district and thereafter to reside in that district continuously.
The State’s final observation, that section 2.722, subdivision 4, requires us to certify a vacancy before the Governor can fill the vacancy, is irrelevant. Section 2.722 addresses what occurs after a vacancy arises, that is, how the vacancy is to be filled, if it is to be filled at all. Section 2.722 does not purport to address how vacancies are created in the first instance. Nor does it address how, when, or why, a district court judge is removed from office.
That section 351.02 may complicate the system for determining judicial vacancies does not deprive that section of its validity or mean that it does not comport with our system for filling vacancies. As discussed, how the office of district court judge becomes vacant is not determinative of how the vacancy is filled.
The court makes a similar argument to that of the State, although relying more on constitutional considerations. The court contends that including district court judges within the definition of “local office” as I do “implies that the Legislature has supremacy over judicial discipline through a self-executing statute.” On this basis the court invokes the constitutional-avoidance canon, see In re Civil Commitment of Giem, 742 N.W.2d 422, 429 (Minn.2007), to conclude that district court judges occupy a statewide office.
For the sake of argument, if it is assumed that the court is correct that my interpretation implies legislative supremacy over judicial discipline, that concern would seem to be present regardless of whether the office of district court judge is a statewide or local office. The court agrees, at least implicitly, that section 351.01(4) would apply if Judge Karasov had not merely moved out of her district but had moved her residence across Minnesota’s border to one of our neighboring states, in which case her office would have “become vacant.” Under the court’s reasoning, the statute would still be self-executing, thereby implying the Legislature’s supremacy over judicial discipline. Therefore, the constitutional concern is present even under the court’s interpretation of “local office.” The court could avoid this game of judicial whack-a-mole by recognizing our role in determining whether a vacancy has arisen.
For these reasons, I conclude that Minn. Stat. § 351.02(4) applies to this case because, even though district court judges are employed within a statewide system and have statewide power, the office of district court judge is a local office. Based on that conclusion, I also conclude that when Judge Karasov ceased being a resident of the Fourth Judicial District on July 1, 2009, her office became vacant.
II.
Because I conclude that under the Minnesota Constitution and Minn.Stat. *528 § 351.02, Judge Karasov did not have the authority to preside over Irby’s trial, it is necessary to consider whether Judge Ka-rasov’s actions may be given effect under the de facto judge doctrine. I conclude that Judge Karasov’s acts cannot be retroactively ratified under the de facto judge doctrine. “A de facto judge is a judge operating under color of law but whose authority is procedurally defective.” State v. Harris, 667 N.W.2d 911, 920 n. 5 (Minn.2003) (citation omitted) (internal quotation marks omitted). “The acts of a de facto judge, actually occupying the office and transacting business, are valid.” Windom, 131 Minn. at 420-21, 155 N.W. at 637 (applying de facto judge doctrine “[t]o avoid useless controversy or litigation”); see Carli v. Rhener, 27 Minn. 292, 293, 7 N.W. 139, 139 (1880) (“The acts of [a de facto] officer are valid as respects the public and persons interested therein, and as to them cannot be questioned.”). But the de facto judge doctrine does not apply to “case[s] where the defect in the underlying statute ‘is not merely technical but embodies a strong policy concerning the proper administration of judicial business.’ ” Harris, 667 N.W.2d at 920 n. 5 (quoting Glidden Co. v. Zdanok, 370 U.S. 530, 535-36, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962) (plurality opinion)).
The defect in Judge Karasov’s authority was not “merely technical”; it was of constitutional magnitude. As I noted at the outset, the Minnesota Constitution establishes only two requirements for qualification to serve as a district court judge: (1) residence within the district in which the judge serves; and (2) that the judge be “learned in the law.” Plainly, the fact that the residence requirement is a constitutional requirement for service as a district court judge is a reflection of Minnesota’s commitment to a “strong policy” that its district court judges be members of the communities in which they serve. Judge Karasov’s conduct violated this policy and, as a consequence, she was not a de facto judge.
III.
Having concluded that Judge Karasov vacated her judicial office as a matter of law, the only suitable remedy is to reverse Irby’s convictions. “Ordinarily we limit our review of errors to which the defendant did not object at trial to those constituting plain error affecting substantial rights,” but we have recognized that plain-error analysis is inappropriate “[i]n a case involving a fundamental question of judicial authority.” Harris, 667 N.W.2d at 920. Accordingly, Irby is entitled to a trial before a duly-authorized district court judge.

. There are, in fact, only two constitutional requirements for the office of district court judge: (1) a district court judge "shall be learned in the law,” Minn. Const. art. VI, § 5; see also In re Daly, 294 Minn. 351, 357-58, 200 N.W.2d 913, 917-18 (1972) (to be "learned in the law” a person must be either admitted, or entitled to admission, to practice as an attorney at law in this state); and (2) must “be a resident of [her] district at the time of [her] selection and during [her] continuance in office,” Minn. Const. art. VI, § 4.

. I place no significance on the absence from our decision in In re Karasov of any discussion of the ramifications of the constitutional violation or of section 351.02 for the simple reason that neither of the parties raised those ramifications or that statute and we, as a court, failed to recognize them on our own.

. As Irby notes in his brief, this construction of the statute is consistent with the Attorney General’s interpretation of section 351.02. See, e.g., Op. Att’y Gen. No. 705-a-8 (Feb. 2, 1948) (soil conservation officer vacated his office when he moved to a village that was not within his district); Op. Att’y Gen. No. 84, at 150 (Aug. 17, 1949) (statute provided for “automatic vacancy” when commissioner of the Albert Lea Housing and Redevelopment Authority ceased to reside in Albert Lea).

. Minnesota Statutes § 209.02, subd. 1 (2012), which governs election contests, also supports my interpretation of section 351.02. Section 209.02, subdivision 1, allows a voter to contest an election or nomination of a person "declared nominated or elected to ... a statewide, county, legislative, municipal, school, or district court office.” (Emphasis added.) If the Legislature considered a district court office to be a statewide office, it would not separately identify these two terms in section 209.02. See Amaral v. Saint Cloud Hosp., 598 N.W.2d 379, 384 (Minn.1999). Accordingly, section 209.02 demonstrates the Legislature’s intent to exclude district court offices from its definition of "statewide office.” State v. Lucas, 589 N.W.2d 91, 94 (Minn.1999) ("The doctrine of in pari materia is a tool of statutory interpretation that allows two statutes with common purposes and subject matter to be construed together to determine the meaning of ambiguous statutory language.”).